C. L. SUMMERS, Extr., v. HUGH REYNOLDS, et als.

*Executor—Fiduciary Duty—Devastavit—Compromising Claims.*

1. Where an executor sold land during the war, under the power given him by the will to sell and divide the proceeds among certain legatees, but the executor would not say in what currency he would take payment, and by this conduct prevented certain parties, who wished to purchase, from bidding at the sale, and said executor, unknown to the parties in interest, procured his partner to purchase the property on their joint account, and accepted payment of the bid in Confederate money; *It was held,* that the executor was chargeable with the value of the property in good money.

2. Where, in such case, the legatees accepted the Confederate money in payment, the executor is entitled to credit for the scaled value of such payments, in his accounts with the legatees.

3. Where a debtor of an estate attempts to compromise his debt, but the executor refuses, on the ground that he has no power to do so, and does not ascertain even what the debtor will give, and afterwards sells the claim for an inconsiderable sum, at a sale of the debts due to the estate made under an order of Court; *It was held,* that the executor was liable for the amount which the debtor afterwards pays to the party who purchased the claim.

4. If an executor or administrator place funds of the estate in bank to his individual credit, it is an appropriation of them to his individual use, and he becomes liable for them, upon the failure of the bank; and this is so although he has no money of his own on deposit in the bank.

5. *It seems,* in such case, that the *cestui qui trust* may either follow the fund, when he can identify it, or he may elect to hold the trustee personally, when the fund has been lost.

6. *It seems,* that if the executor, acting in good faith, thinks that, under the will, the fund is his individual property, he will not be held accountable for converting it into securities payable to himself individually, which afterwards become valueless.

(*Peyton* v. *Smith,* 2 Dev. & Bat. Eq., 325; *Shipp* v. *Hetrick,* 63 N. C., 329, cited and approved; *Syme* v. *Badger,* 92 N. C., 706, distinguished).

CIVIL ACTION, heard upon exceptions to the report of a referee, before *Boykin, Judge,* at August Term, 1886, of IREDELL Superior Court.

William H. Watts died in the month of June, 1863, leaving a considerable estate, real and personal, and having made a will, which at August Term ensuing of Iredell county County Court, was admitted to probate, and the plaintiff, Charles L. Summers, nominated therein sole executor, was qualified as such by taking the prescribed oath.

The testator, in the first clause of the will, devises to Phillip and Eliza Shuford, and the survivor of them, the tract of land whereon they then resided, containing about one hundred and eighty acres. In the second, he bequeaths to Geo. C. Watts, his brother, $1,000; and in the third, a like sum to Jane C. Reynolds, a sister, who, with her husband, is a defendant.

In the concluding clause of his will, which follows the special dispositions mentioned, the testator directs, excepting a small lot occupied by Thomas Pond, that the remainder of his property particularly described, be sold, and the proceeds with other funds, after the payment of his debts, be distributed among his nephews and neices, and the children of such as may die before himself leaving issue, the latter taking representatively the share of the parent, with deductions from the share of each, of the indebtedness of the parent or children, and excluding from the distribution a niece, Margaret, for the reason that she had been provided for by her friends.

The plaintiff proceeded in the execution of the trusts of the will, until March 20th, 1876, when he sued out a summons against the defendants, beneficiaries under the will, for an account and settlement of his administration, and in order to the payment of what may be found to be due to each. The legatee, George C. Watts is omitted, as it is alleged in the complaint he has been fully paid.

The pleadings being filed, the clerk proceeded to hear the evidence, pending the taking of which the plaintiff filed a supplemental complaint, wherein he states that of the moneys in his hands when the original complaint was filed, a consid-

erable portion, setting out the several sums, had been deposited for safe keeping, and to await the result of the suit, in the Bank of Statesville, and was lost by its unexpected insolvency, from responsibility for which loss, he claims to be exonerated.

The clerk made his report, and after exceptions thereto taken by both parties, and his rulings upon them, the cause was removed by appeal to the Judge.

The cause coming on to be heard before him, the report was set aside and a new reference ordered, at Fall Term, 1882, and the referee directed to hear and determine the cause *de novo.* This second report was accordingly made, with the evidence and finding of the referee, when two series of exceptions were filed by counsel representing different defendants, as follows :

"I. That the clerk fails to find the fact that the executor, C. L. Summers, was interested in the purchase at his own sale of the store-house and lot bid off by M. Boger, and he failed to charge said executor with the value of the said store-house and lot.

2. That he erred in not charging said executor with the full amount of the T. R. Watts judgment, $____, instead of the amount for which it was sold.

3. That he erred in not charging said executor with the full amount of the certificates of deposit in the Bank of Statesville, $1,250 and interest, instead of finding him only liable to the amount he may hereafter realize on the same out of the assets of said bank.

4. That he erred in not charging said executor with interest on all moneys received, from the date of receipt to day of settlement, as said executor kept no interest account in managing said estate.

5. That he erred in adding a premium of ten *per cent.* on the scaled value of the legacy of Jane Reynolds.

6. That he erroneously allowed said executor a credit for any Confederate money.

7. That he erred in allowing said executor his commissions in greenbacks on the Confederate account, when he had Confederate currency on hand all the time, and is now credited with the same."

The other exceptions were as follows:

"1. The defendants except to the clerk's report in this: That he fails to find as a fact, that the executor, C. L. Summers, was personally interested in the purchase by M. Boger, the highest bidder, at his own sale, of the store-house and lot bid off by M. Boger, and in that he fails to charge the executor with the value thereof, the evidence being that he was the actual purchaser of said house and lot for himself and others.

2. That the clerk erroneously finds as a fact, that the plaintiff sold the real estate of his testator for Confederate money, and charges the proceeds in Confederate money, whereas the weight of evidence is that the sales were not for Confederate money.

3. That the clerk erred in not charging the executor with the full value of the real estate sold in good money, it being gross negligence in said executor to sell real estate for Confederate money in October, 1863, the estate of his testator not being indebted so as to make it necessary to sell real property far assets.

4. That he erred in not charging the executor with the amount of the T. R. Watts judgment, $252, principal and interest, of which $157 was principal, instead of the amount for which it was sold, to-wit: $1.00.

5. That he erred in not charging the excutor with the full amount of the certificates of deposit in the Bank of Statesville, to-wit: $1,250 principal, with interest thereon, instead of finding him only liable to the amount he may realize on the same out of the assets of said bank.

6. That the clerk erred in allowing the executor credit for any Confederate money."

All the other exceptions which were filed were withdrawn.

The facts developed by the proofs, and the rulings of the Judge based upon them, are thus set out in the record:

"1. That the first exception be sustained, and the following facts are found:

Previous to the sale of the house and lot in Statesville, on the 13th day of October, 1863, it was agreed between plaintiff and H. B. Reece, who was his partner in business, that plaintiff and said Reece, should buy the said house and lot at said sale. Reece told M. Boger to bid it off for $3,000. Subsequently Boger was let in with plaintiff and Reece.

The deed was made by plaintiff to Boger, on the 9th of January, 1864, and on the same day Boger conveyed two-thirds of said property to Reece and plaintiff. The purchase money was paid out of the partnership business of plaintiff and Reece.

It was not announced at the sale, nor was it stated in the notice of sale, whether Confederate money or specie would be taken in payment for the property sold, but to several persons who made enquiries, plaintiff replied that the sale was to be for good money, or such money as would be taken by the heirs. Some persons who desired to bid in Confederate currency, upon this information declined to bid. It does not appear that the legatees knew that the plaintiff was personally interested in the purchase.

The house and lot was worth $1,500 in the present currency, and the plaintiff should be charged with that sum, with interest from the date of sale, as the sale was made upon a credit of six months with interest from date of sale. And the plaintiff should be credited with the amounts paid out of the $3,000, in Confederate money, reduced by the scale, with interest from the time of the payments. Plaintiff excepts.

2. The second exception is overruled, and it is found as a fact, that the lands were sold for good money, or what would be received by the legatees, and that several of the legatees were present at the sale, and made no objection thereto, and soon afterwards received their shares of the purchase money arising from said sale in Confederate currency, as did the guardian of several of the minors who were legatees. Defendant excepts.

3. The third exception is overruled, and it is found as a fact, that the plaintiff, construing the will to direct an immediate sale of the property and payment of legacies, did make such sales, and paid out the moneys arising from said sales, to the persons entitled or their guardians; that no objection was made by those interested, and that they accepted their shares of the funds arising from said sales, except the Shuford heirs, who had no guardian, and Reynolds and wife who made no objection to the sales.

The sales and distribution seem to have been made with the assent of nearly all who were interested, or their guardians. Defendants except.

4. The fourth exception is sustained, and the following facts found:

Plaintiff had a judgment against one T. R. Watts, for $252 and interest. He caused executions to be issued, and the sheriff made return, "Nothing to be found." Subsequently to this return, plaintiff was approached by one N. P. Watts, the son of the defendant in the execution, and told that said N. P. Watts wanted to compromise said judgment. Plaintiff told him that he could not compromise a judgment, but was going to sell it, and Watts could come to the sale and buy in the judgment. Watts was present at the first sale, and the judgment was not offered, plaintiff saying afterwards that he did not know that N. P. Watts was present. At a subsequent sale, the judgment was sold for $1.00, and N. P. Watts afterwards compromised the same for $150.

The executor had authority to compromise such claims, and did not use due diligence, after notice that the party desired to compromise, and he should be charged with the amount which was paid in satisfaction of the said judgment, less the amount which he received for the same. Plaintiff excepts.

5. The fifth exception is sustained, and the following facts found:

The institution called the Bank of Statesville, was considered a safe place of deposit for funds, prudent business men were doing business with the said bank, and there was no apparent reason to question the safety of funds so deposited.

On the 22d of November, 1873, plaintiff deposited in said bank, $650, and took from the cashier, R. F. Simonton, a certificate of deposit, payable ten days after notice, and bearing eight per cent. interest. And on December 17th, 1873, plaintiff deposited in the same bank $100, and took from the cashier a like certificate of deposit, and on the 8th day of January, 1874, plaintiff deposited $500 additional, and took a certificate of deposit for the same, bearing like interest and payable on call. These funds belonged to the estate of plaintiff's testator. Plaintiff had funds of his own in this bank and other certificates in his own name. These certificates were all in the name of C. L. Summers, (the plaintiff), and there was nothing upon the face of the certificate, and nothing was endorsed upon the same, to indicate that they represented trust funds held by the plaintiff. It was evident to the plaintiff, at the time he made the deposits, that he would have to hold the money in his hands belonging to the estate of his testator for some time, and it was a prudent disposition of the said funds to invest the same in certificates of deposit in said bank.

Plaintiff told the cashier at the time he made these deposits, that the fund belonged to the estate of W. F. Watts, and

that he made it as a call deposit, and would draw it out when he needed it in the settlement of the estate.

The cashier died, the bank became bankrupt, and but a portion of the fund so deposited will be realized. He must be charged with the sum so deposited, and interest. Plaintiff excepts.

6. The sixth exception is overruled. It appears as a fact that a large amount of Confederate money came into the hands of the plaintiff, as on hand at the death of his testator. Defendant excepts.

And it is ordered that the referee reform his report in accordance with the foregoing rulings, and make report to the next term of this court."

The report being reformed according to these rulings, the plaintiff's counsel also filed an exception, as follows:

"The plaintiff, in addition to the exceptions heretofore taken upon the rulings of *MacRae, Judge,* and noted in the record, files the following exceptions to the reformed report, made to this term of the Court:

1. For that it appears from said report, that plaintiff paid to the legatees the sum of $3,453.86 in Confederate currency more than he received from testator's estate, and for which he should have credit against them for at least its scaled value. And in commissions not allowed, this plaintiff alleges error.

The reformed report of the clerk charges the executor, Summers, with $1,285.75, with interest from 13th October, 1863, to 9th August, 1886. The clerk did not allow the executor commission on the interest so charged. The plaintiff excepts to said report, because no commission was allowed on said interest by the clerk. Exceptions not sustained. Appeal.

The facts upon which the ruling is made are embraced in first exception of defendants, heard and decided at Febru-

ary Term, 1886, by his Honor, Judge MacRae, and the facts then found are the facts upon which this exception is heard.

There was a judgment for the defendants upon the reformed report, and the plaintiff appealed.

*Messrs. D. M. Furches, John Devereux, Jr., M. L. McCorkle* and *Jos. B. Bachelor*, for the plaintiff.
*Mr. Charles Armfield*, for the defendants.

SMITH, C. J. (after stating the facts):

I. The circumstances attending the sale of the house and lot in Statesville, the plaintiff's answer to inquiries from persons intending to bid as to what currency payment would be required to be made in, which prevented them from bidding, and the private arrangement between himself and partner, H. B. Reese, to buy in the property for themselves, carried into effect through the agency of Boger, so strongly mark the *mala fides* with which the sale was conducted, and the utter disregard of fiduciary duty on the part of the plaintiff, as to fully warrant the ruling of the Judge in charging him with the real value of the lot in the present currency. And so far as he has paid out portions of the Confederate money, received from his own firm in discharge of the bid, to the legatees, he should be credited with the scaled value of such payments in his separate accounts with each.

II. The next exception, numbered 4 in the series, is taken to the ruling by which the plaintiff is charged with the debt of $252, and interest, due by T. R. Watts to the testator's estate. N. P. Watts, a son of the debtor, proposed to compromise the claim, which the plaintiff declined, saying that Watts could attend the sale and buy the judgment. The judgment was accordingly sold, and bought by Watts for $1.00, and he afterwards, in compromise, obtained $150.00 for it. It was a culpable indifference to fiduciary duty to entertain no proposition, and not even to inquire what sum would be

offered, and with this information of the debtor's desire to settle the claim, permit it to be bought for so inconsiderable a sum. While he had authority to dispose of the debt at public sale, his general obligation remained to see that the assets of the estate were not thrown away and lost.

But we do not concur in the opinion of the Court, that the plaintiff should be held responsible for the entire amount. Assuming that the sum paid the assignee was the full measure of its value, and that the executor could have obtained that sum, he ought to be held liable for $150, instead of $1; but not for the excess of the debt above that limit.

III. The next exception is to the plaintiff's being charged with the full amount of the deposits in the bank. The first of the certifications, and the others are substantially in the same form, is as follows:

BANK OF STATESVILLE,

No. 1019.　　　　　　STATESVILLE, N. C., January 8th, 1874.

C. L. Summers has deposited in this bank five hundred dollars, payable ten days after notice is given to R. F. Simonton, Cashier, on the return of this certificate properly endorsed, with interest at the rate of eight *per cent. per annum*, on call.

$500.00.　　　　　　　R. F. SIMONTON, Cashier.

The facts all show entire good faith, and a purpose to preserve the fund for distribution among the legatees, and not to derive any personal benefit from the deposit, and the executor is charged with the full amount, because his fiduciary character is not annexed to his name, so as to mark the moneys as belonging to the trust estate, and this, in the opinion of the Court, is an act of maladministration, and a *devastavit*. The liability is adjudged solely upon the ground that the certificates were issued to the plaintiff, not designating the representative character in which, as declared to the cashier, the deposit in fact was made, and this, we suppose, upon the authority of the case of *Peyton* v. *Smith*, 2 D. & B. Eq., 325. In that case, the deposits were to the credit of the

·depositor, and were not distinguishable from those of his own, not held in trust. "From these accounts, then," says GASTON, J., speaking for the Court, "it is to be collected that the trust funds went *into the mass of the executor's property,* and, by no visible marks or signs, were in any respect distinguished from his private moneys. They swelled the executor's personal credit at bank; upon his death they become assets in the hands of his personal representative; and could not have been claimed as the assets of the testator by a representative of that estate;—they were liable to his creditors, were in all respects his property, he charging himself with the amount thereof in account with his *cestui qui trusts.*"

Such an intermixture of funds held in trust, with his own, so as to constitute one aggregate credit, it must be admitted, is an appropriation of the former to his own individual use, for which he at once becomes liable.

If the executor pays the money of the testator into ˍa bankers, not on any distinct account, but " *mixing it with his own money,*" (the italics are those of the author), " it should seem that the executor will be answerable for the loss sustained by the failure of the banker." 2 Williams on Ex., 1292.

In *Shipp* v. *Hettrick,* 63 N. C., 329, where the executor sought to be delivered from the loss of Confederate money which came into his hands, but which he did not separate and set apart, so that it could be identified, the Court say: "If he, (the executor), had separated the money from all other moneys in his hands, and retained it as a special deposit for Louisa E. Hettrick, the case would have been different, notwithstanding the fact that it became worthless. But he did none of these things; on the contrary, he kept it with his own moneys. If he had made a general deposit of this money in bank in his own name, it would not have relieved him; but if he had made a special deposit of a particular parcel for this particular purpose, it would have been otherwise."

The trustee is responsible, "if he deposits it at his banker's mixed up with his own moneys;" Adams Eq., 60, and such is generally the language employed by the authorites. We do not suppose it is necessary that there should be personal funds of the trustee to his credit when those held in trust are deposited. It is sufficient to make the conversion, that the account is opened with the depositor in his individual name, and would blend with money of his own, when deposited, and thus a common credit be secured.

In *Brown* .v. *Durham*, 2 Gray, 42, a guardian sold property belonging to his ward, and took therefor promissory notes, payable to himself or bearer, on some of which payments had been made. The guardian died, and his estate was insolvent. The minor, through a succeeding guardian, sued the administrator of the former for these notes, as the property of the ward. Delivering the opinion, THOMAS, J.,says: "They were retained by the guardian, not negotiated nor pledged, nor in any way used for his own business. They are clearly identified and traced. The fact that they were made payable to the guardian, in his own name, and negotiable, without any evidence of appropriation, or of any attempt to appropriate them to his own use, is not sufficient evidence of his conversion of the money, and mingling it with his own. Such breach of duty is not to be presumed, and the mere form of the notes fails to establish it." This ruling establishes the right of the equitable owner of the fund, where the guardian is insolvent, to pursue and recover it, where its identity is clearly shown, but it does not decide that he may not elect to hold the guardian personally liable, when the fund has been rendered valueless, as in our case.

In *Parsley* v. *Martin*, 46 Amer. Rep., 733, money held in trust, was deposited by the guardian in a Richmond bank, and a certificate taken in his individual name. He had no money of his own on deposit. The bank went down in the

financial catastrophe which attended the downfall of the Confederacy, and the fund was lost. The guardian was relieved of the loss, the Court remarking that "a *bona fide* deposit of the money of his ward by the guardian in his individual name, provided that it can be shown that it was in fact the money of his ward, will acquit and protect the guardian from the responsibility for loss which ensues, not by the form or designation of the deposit, but which has been lost by the *general and universal destruction of the whole currency, and all the banking and financial interests of the State.*" This ruling, contrary to the current of the decisions, may perhaps find a support in the extraordinary circumstances attending the conduct of the guardian, and his inability to take any better care of the trust estate, and when perhaps any other disposal of the money would have shared a like fate.

We have been referred to a recent case in our own reports, *Syme* v. *Badger,* 92 N. C., 706, where an exchange was made by an executrix, of a note that came into her hands, and a new security taken, payable to herself. This was done under the belief (from advice of counsel perhaps) that the testator's entire estate belonged to herself, and in effect to render it more secure. It was not an intended interference with the funds of the estate, but the management of what was supposed to be her own. In this respect that case is distinguishable from the present, for here the executor was dealing with a fund not his own, nor supposed to be his own, but as a trustee with the trust estate. At least, we cannot carry the ruling in that case so far as to cover and protect the plaintiff in this transaction.

Harsh as may seem, the rule of responsibility in the case before us, where any element of wrong is absent, and the penalty is incurred solely in consequence of the form of the certificate, it is too well founded for us to disregard it. The case of *Williams* .v. *Williams,* 15 Wisc., 300, is so full and exhaustive a discussion of the doctrine, with an examination

of the adjudications from early times, and the reasoning so conclusive, as to dispense with a further discussion. The deposit was upon a similar certificate, and realizing the harshness of the operation of the rule, the Court thus speaks: "To hold the administrator answerable in this case, is undoubtedly a great hardship; but to exonorate him from liability is to encourage the mismanagement of trust funds, and to open the door to frauds innumerable against those whose age and weakness entitle them to the most rigid protection of the law. The rule, therefore, should not be slackened, even if the question were a new one, much less in view of the authorities cited." We therefore concur with the Court in the disposition made of this exception.

The plaintiff's last exception must be upheld, and he should be allowed commissions upon the amount of the increased interest also.

There must be a reference to the clerk, in order to a reformation of the account in accordance with this opinion, unless by consent, the reference be made to the former referee, whose familiarity with the case will render its execution less laborious, and with such consent, to said referee, to the end that judgment final may be entered.

Error.                                                    Modified.