### SAGONE v. MACKEY.

(Supreme Court, Appellate Division, First Department. April 20, 1916.)

1. PRINCIPAL AND AGENT ⊙159(2)—DEPOSIT OF FUNDS—LIABILITY OF AGENT.

Defendant, who, as agent of a surety company, kept a personal bank account by its permission, from which he drew for personal use to a certain amount, and paid the balance to the company upon an accounting, and who received from plaintiff $940 by reason that the company was upon her bond as administratrix, which amount she had received under settlement of an action for the death of her husband, and which was the part belonging to her children, and placed $240 in the cash drawer for current expenses, and the balance into the account, without making the deposit as of trust funds, and failed to turn over any part of such account, was guilty of a breach of trust, and liable therefor to the plaintiff.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 606–612; Dec. Dig. ⊙159(2).]

2. PRINCIPAL AND AGENT ⊙159(2)—MISAPPROPRIATION—LIABILITY OF AGENT.

Where an agent misapplies and misappropriates trust moneys, the agent as well as the principal is liable to the cestui que trust.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 606–612; Dec. Dig. ⊙159(2).]

3. PRINCIPAL AND AGENT ⊙159(2)—MISAPPROPRIATION—LIABILITY OF AGENT —DEFENSE.

Where defendant, as the agent of a trust company, received money in trust for plaintiff, and mingled it with a joint fund of himself and the company, so that it could not be traced and was never accounted for, leaving plaintiff nothing but a personal action, it was no defense to the agent's personal liability that there was a claim against the principal.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 606–612; Dec. Dig. ⊙159(2).]

---

⊙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. PRINCIPAL AND AGENT ⬅184(2)—WRONGFUL ACT OF AGENT—REMEDY.
    In such case the plaintiff might pursue the remedy against either the principal or the agent.
    [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 701½, 703; Dec. Dig. ⬅184(2).]
    Laughlin and Scott, JJ., dissenting.

Appeal from Appellate Term, First Department.

Action by Concetta Sagone, as administratrix of the estate of Giacomo Sagone, against David Clinton Mackey. From a determination of the Appellate Term (155 N. Y. Supp. 354), reversing a judgment of the Municipal Court in favor of the plaintiff, she appeals. Determination reversed, and judgment of the Municipal Court affirmed.

See, also, 92 Misc. Rep. 453, 156 N. Y. Supp. 84.

Argued before CLARKE, P. J., and LAUGHLIN, SCOTT, DOWLING, and SMITH, JJ.

Samuel F. Frank, of New York City, for appellant.
John Ewen, of New York City, for respondent.

SMITH, J. The action is to recover trust funds placed in the hands of the defendant, who was the general agent of the Illinois Surety Company, and by him misapplied and converted to his own use. The defendant's answer is that the moneys were received by him as such agent, and that his principal is liable for the fund, and that he is not.

The Illinois Surety Company is a foreign corporation doing business in this state, and this defendant was their general agent. He was doing business in the name of Mackey & Abbott. Abbott, who was formerly a member of the firm, had died, so that the name, as used, represented the defendant only. The moneys in question were moneys which the plaintiff placed in the hands of the defendant, by reason of the fact that the Illinois Surety Company was upon her bond as administratrix. They were moneys received in settlement of an action for the death of her husband, and originally amounted to $1,500. When they were taken to the defendant for deposit, the widow's interest of one-third was deducted therefrom, and there was deposited the sum of about $940, which was the portion of said recovery which belonged to her children. It was first deposited until she could be appointed guardian of her children, when the money was to be turned over to her, and deposited by her in some savings bank. After she was appointed guardian, the moneys were given to her; but for some reason she changed her mind, and determined to leave them with the defendant, and have them sent over to Italy, where she was intending to go and take her children. This arrangement was made through the Italian consul and the moneys were returned to the defendant. Thereafter the plaintiff made a demand upon the Illinois Surety Company for the moneys, which demand was refused, upon the ground that the moneys were still with the agent, who was responsible for them. A demand was then made upon the defendant, who refused to pay over

the moneys upon the ground that, because the moneys were received by him as agent of the surety company, the liability was that of the surety company and not his own.

When this nine hundred odd dollars was first given to the defendant, all except $700 was put in the defendant's cash drawer and went to pay the incidental expenses of the office. Seven hundred dollars was put in the Empire Trust Company to the account named Mackey & Abbott, upon which checks were drawn by Mackey only. After the moneys were returned to the plaintiff after she was appointed guardian, and were redelivered to the defendant, it would appear that again part thereof was used for some purpose, and that $700 or $750 (it is not clear which sum) was again deposited in the Empire Trust Company to this account of Mackey & Abbott. This account of Mackey & Abbott seems to have been an account by Mackey for deposit and withdrawal of the agency moneys. One of the witnesses swears that he thought Mackey had another private account. Into this account, however, were deposited all moneys received belonging to the Illinois Surety Company, and from the account were drawn any moneys necessary to pay the expenses of the agency and for Mackey's personal use up to a certain percentage of the deposits to which Mackey was entitled. By arrangement between Mackey and the surety company, Mackey was to pay all the expenses of the agency personally and to receive a certain commission, either 30 or 40 per cent. of the business done, and he swears that up to the amount of that commission he would draw out of said account either for expenses or for personal use. The evidence is to the effect that upon a monthly accounting, after he had drawn such sum as would amount to the commissions to which he was entitled, he would pay over the balance to the surety company.

There was some effort to prove that formerly there was an account in the name of the Illinois Surety Company, which was attached in some action against that company, and that thereafter, by agreement of the surety company and Mackey, the surety company account was to be put in the name of Mackey & Abbott, and from that account Mackey was to draw for any purpose he might choose up to the amount of his commissions and the balance to be paid over to the surety company. This evidence was rejected by the trial court, and I think rightly so, because, however the parties may have characterized the account, it was clearly a personal account of Mackey, kept by permission of the surety company, from which he could draw for personal use up to a certain amount, with an agreement to pay the balance from said account over to the surety company upon an accounting. That this was so considered is clear from the course of the business shown by the evidence. When this nine hundred forty odd dollars was first deposited, $240 were put in the cash drawer for the current expenses of the business, and the balance only was put into the bank account. Furthermore, upon the dissolution of the agency in December following this transaction, no part of that bank account was turned over. He claims to have satisfied it by paying other moneys to the surety company, the proceeds of sale of certain stock. If, therefore, the facts

may be assumed as were offered to be proven by the defendant, the bank account would still remain the personal account of Mackey, and the deposit of the moneys therein would be deemed a deposit to his personal account.

[1, 2] With these facts undisputed, the question remains whether Mackey is personally liable to this administratrix for the moneys so left in trust, or whether the fact that the moneys were received as agent of the Illinois Surety Company, which fact will be assumed in this discussion, relieves Mackey from any personal liability and leaves the plaintiff to a remedy against the company alone.

In 39 Cyc. 421, in discussing a deposit by a trustee in a bank, the text reads:

"Moreover, if a trustee would protect himself from loss, he must make the deposit as of trust funds, and not as his own. If he place funds of the estate in bank to his individual credit, *it is an appropriation of them to his individual use*, and he becomes liable for them upon the failure of the bank."

In Matter of Stafford, 11 Barb. 353, it is held:

"Where a trustee deposits the funds of the trust estate in a bank, in his own name individually, and not as trustee, and with his own private funds, *he thereby becomes the debtor of the estate*, and the creditor of the bank; and in case the trust funds are lost, through the insolvency of the bank, the loss will fall upon the trustee."

In Duffy v. Duncan, 32 Barb. 593, the opinion in part reads:

"Logan admits that he used the moneys remaining in his hands, and the sum received by Duncan was mingled with his individual moneys and deposited in bank to his individual credit. It was the duty of the trustees to keep the trust funds entirely separate and distinct from their own moneys. If deposited in a bank, it should have been deposited to a separate account and in the name of the trustees as such, to the end that the fund could at all times be traced and identified. By mingling the trust fund with their own *they committed a breach of trust*, and were legally chargeable with simple interest thereon, although they may have made no profit by their use. They did create a credit at the bank by their deposit."

In Summers v. Reynolds, 95 N. C. 414, the opinion, in respect of a deposit of trust funds to the personal account of a trustee, reads:

"They swelled the executor's personal credit at bank; upon his death they become assets in the hands of his personal representative; and could not have been claimed as the assets of the testator by a representative of that estate;—they were liable to his creditors, were in all respects his property, he charging himself with the amount thereof in account with his cestui que trust. Such an intermixture of funds held in trust with his own, so as to constitute one aggregate credit, it must be admitted, *is an appropriation of the former to his own individual use*, for which he at once becomes liable."

In Jenkins v. Walter, 8 Gill. & J. (Md.) 224, the opinion reads:

"The fact, alleged by the defendant, that he had always a balance in his banker's hands equal to the trust money, is in my view of the case immaterial. I consider the trust moneys thus mixed with his own and placed in his banker's hands, on his own general account, to be an employment of the trust money for his own advantage or his own credit, and that he is therefore responsible for the loss which has resulted from it."

In Noble's Estate, 178 Pa. 462, 35 Atl. 859, the opinion reads:

"So on the same principle a bailiff who takes a note or an executor who deposits trust funds in his own name may be held personally responsible.

McAllister v. Com., 30 Pa. 536. But where the identity of the fund has been lost by a breach of trust, even the opportunity of election is taken from the cestui que trust. A confusion of goods has taken place, and *conversion by the trustee to his own use implied.* Such investments were characterized in Morris v. Wallace, 3 Pa. 319 [45 Am. Dec. 642], as a 'legal fraud, liable to all the consequences as such, without regard to the intention, the integrity of the trustee, or the honesty and good faith of the particular transaction,' and bear interest from the time of conversion. The present guardian brought himself within the reason of this rule; he admittedly mingled the trust fund with his own. True, he claims to have invested them; but he is unable to produce the securities, or show when the investments were made. The cestui que trust is thus deprived of even the opportunity of election, and is forced to treat the trustee as having assumed the added character of debtor with its incidents."

It is answered, however, that this wrongful act is the wrongful act of the Illinois Surety Company; but it is also the wrongful act of the agent, who knowingly made this misappropriation. The law is so well settled that authority is hardly needed to the proposition, where an agent misapplies and misappropriates trust moneys, that the agent as well as the principal is liable to the cestui que trust therefor.

In 31 Cyc. at page 1560, the unquestioned rule, well established by the authorities cited, is thus stated:

"While an agent is not liable to third persons for injury resulting from his omission to perform a duty owed to the principal alone, he is liable to them for injury resulting from his misfeasance or malfeasance, meaning by those terms the breach of a duty owed to third persons generally, independent of the particular duties imposed by his agency. Accordingly an agent may be held liable in damages to third persons for conversion, fraud, and deceit. * * * In an action against an agent by a third person for misfeasance or malfeasance, it is no defense that he acted as agent or by the authority or direction of another, for no one can lawfully authorize the commission of a tort."

When this defendant, therefore, received these trust funds, it was not only the duty of his principal, but his own duty, to keep them separate and distinct, not only from the general funds of the company, but also from his individual funds. When he mingled them in an account which contained a general fund of the company and also an individual fund from which he drew for his personal use, he, as well as his principal, was liable for misfeasance and misappropriation. His wrongful act, therefore, was a breach of duty owing to the cestui que trust for which he can be held personally liable.

[3, 4] One more question may be briefly considered. It is contended, because the cestui que trust has a claim against the surety company, that it has suffered no damage from the misapplication of the agent. This contention may be first answered that, where a principal and agent are both liable, it is no answer to either one that there is a claim against the other. The person injured may pursue his remedy against either one. But, further, the facts of this case show distinctly the injury done by the defendant to this cestui que trust. If this fund had been kept separate, there would have been no question as to its return. If the fund could be identified, the fund itself could be sought and obtained. It is because it was intermingled with a joint fund, if you choose, of the agent and the surety, that the plaintiff is here, de-

nied relief by both agent and surety on the ground that the other is the responsible party. As the fund cannot be traced, by reason of its intermingling, the plaintiff is left to a personal action, and because of this result the defendant may well be held personally liable for the amount of this fund, the identity of which he himself has destroyed.

The determination of the Appellate Term should be reversed, with costs, and the judgment of the Municipal Court affirmed, with costs.

CLARKE, P. J., and DOWLING, J., concur.

LAUGHLIN, J. (dissenting). The record on the trial in the Municipal Court shows that the plaintiff claimed in her bill of particulars that the money was left with the defendant, not individually, but as agent for the Illinois Surety Company, to be deposited in the Empire Trust Company for her in her name, subject to the joint control of the Illinois Surety Company. The surety company had given a bond on the appointment of plaintiff as administratrix for the purpose of bringing the action which resulted in the collection of the fund, one-third of which belonged to her and one-third to each of her children. The plan agreed upon between the plaintiff and the surety company originally was to deposit any moneys received by her as administratrix in the Empire Trust Company subject to their joint control, but that was abandoned by mutual consent, and when the money was collected she determined that she did not wish it deposited to her credit as administratrix, but desired to withdraw her own share and be appointed general guardian for her children, and in that capacity hold their shares. She evidently collected the money, for the evidence shows that she brought it to the office of the defendant, and after deducting her share it was left to be held pending her appointment as guardian, with the understanding that the surety company was to become her surety as guardian, and upon her appointment as such the money was to be similarly deposited in her name as guardian in the Emigrants' Savings Bank, subject to their joint control. The money was deposited in the account of the surety company, kept by its authority in the name of the defendant, or that of his firm. It was subsequently withdrawn, with a view to consummating the plan with respect to depositing it to the credit of plaintiff as guardian, subject to the joint control of herself and the surety company; but with the money before her on the table in the office of the defendant as agent for the surety company, she changed her mind, and according to the testimony of the assistant manager in defendant's office, who conducted all the negotiations with plaintiff in behalf of the surety company, she left the money to be redeposited until arrangements could be made for its transmission through the Italian consul to Italy, defendant having at her request consented to the cancellation of the bond given by the surety company upon her appointment as guardian, which was to be done upon the revocation of the letters of guardianship.

When evidence was offered tending to show that the account in which the money was deposited, although kept in the name of the agent, was the account of the principal so kept by its authority, the trial court said:

"I do not question he [defendant] had the right to deposit this money in this account."

The theory of the trial court with respect to the conversion was that the defendant had checked the money out in his business and for his own purposes, and failed to account therefor to his principal. It is evident from the record that that is the theory upon which the defendant was held liable. I am of opinion that it was an erroneous theory. If, as the evidence indicated, the plaintiff authorized the surety company to retain and deposit the money, without requiring it to make a special deposit thereof then there was no conversion in the original redeposit of the money in the surety company's account which was kept in the defendant's name, and the relation of debtor and creditor between the surety company and the plaintiff thereupon arose. On these facts, the agent could not be held liable to the plaintiff for subsequently converting the money to his credit in the account, and it would be immaterial, so far as she is concerned, whether he accounted to his principal therefor or not. But he gave evidence tending to show that he did account to his principal therefor, and further evidence offered by him tending to show that he had so accounted was erroneously excluded.

I am of opinion, therefore, that the learned Appellate Term was right in reversing the judgment and granting a new trial, upon which the facts with respect to the authority for the redeposit of the fund, upon which alone the defendant's liability for conversion must depend, may be more fully shown, for plaintiff was not called as a witness on the trial now under review.

SCOTT, J., concurs.