M. A. ALLEN, et al. v. R. J. ALLEN and STERLING JOHNSTON.

*Executor—Qualification—Will, Construction of—Devise to Executor—Election to Take Under the Will—Charge on Land—Vested Estate—Condition Precedent—Mortgagee—Constructive Notice.*

1. Where a testator disposes of property belonging to the executor named in the will and at the same time and in the same will gives to such executor property of the testator, the executor by qualifying as such is held to make an election to take under the will and must execute it in all its provisions, his oath of office being irrevocable on his part.

2. Where land is devised to a person if he will pay a certain sum, and there is no devise over to another, the limitation will be considered a charge upon the land rather than a condition precedent, since the law favors a vesting of estates rather than estates upon such condition.

3. The principle of constructive notice arises out of the duty of an intending purchaser of land to reasonably and in common prudence see that his vendor has, *prima facie*, a good title; and while, because of such duty, he is affected with notice of the provisions of such deeds and other documents as are necessary to show the vendor's title, yet

·when he finds upon record a deed to his vendor from the former owner conveying an absolute estate in the land, he is not affected with notice of the provisions of the grantor's will recorded in the Clerk's office executed prior to the deed and devising the land to the grantee in such deed subject to a charge.

4. A testator, after devising certain lands to his wife for life, devised as fol lows: "If (at her death) my son R. shall think proper to pay $2,000 for all the land and residence that I left to my wife during her life, he shall have the privilege of doing so and he shall have a fee simple right and title to it, to him and his heirs forever." After the execution of the will the testator by deed dated May, 1872, conveyed the land mentioned to his son R. The testator died in 1874 and R. qualified as sole executor of the will. In 1876 R. had the deed recorded and took possession of the land, residing thereon with his mother until her death in May, 1886. In May, 1893, he executed a mortgage upon the land to J., who had no actual notice of the provisions of the will. On October 10, 1893, the plaintiffs who, with R., are the heirs and next of kin of the testator, commenced an action to recover their respective shares of the $2,000 with which they claimed the land to be charged. *Held*, (1) That, by qualifying as Executor, R. elected to "take under the will" and took a vested estate in the land mentioned therein charged with the $2,000, as to the collection of which from R. the plaintiffs, except those under disabilities, are barred by the Statute of Limitations. (2) That the mortgage to J., who had no actual or constructive notice of the provisions of the will, is not affected by the charge upon the land but is a first lien thereon.

CIVIL ACTION to have · a charge declared upon land in favor of plaintiffs, tried before *Robinson, J.*, upon a case agreed at Fall Term, 1896, of HALIFAX Superior Court. There was judgment for the defendants and plaintiffs appealed.

The facts appear in the opinion.

*Messrs. MacRae & Day*, for plaintiffs (appellants).
*Mr. R. O. Burton*, for defendants.

MONTGOMERY, J.: The last will and testament of M. A. Allen, who died in Halifax County on the 9th of September, 1874, was duly admitted to probate in the December following. The will contained a devise to R. J. Allen, the testa-

121—42

tor's son, of a tract of land of about 200 acres and a legacy of $940. In a codicil the testator uses the following language: "Whereas it is my desire that one of my sons should live at my old residence who bears my family name, in order therefore to place it in their power to do so, I make the following provision in will: If my son R. J. Allen will agree to live at my old residence that I have left my wife during her life, at her death, if my son R. J. Allen shall think proper to pay $2,000 for all the land and residence that I left to my wife during her life, he shall have the privilege of doing so, and he shall have a fee simple right and title to it to him and his heirs forever." The four children of the testator were named executors but R. J. Allen alone qualified. The testator, in May, 1872, more than a year after the date of the execution of the will, made and delivered to R. J. Allen a deed in fee to the tract of land mentioned in the codicil. The grantee took possession of the tract of land in 1876, and in 1893 executed a mortgage upon the same to Sterling Johnston, one of the defendants, to secure a debt of $1,520 due to Johnston.

The first question presented for consideration is whether the simple qualification of R. J. Allen as executor of the will of his father, was *ipso facto* an election by the son to take under the provisions of the will. If such qualification amounts to such election, then the interest of the son in the tract of land described in the codicil is, so far as the son is concerned, derived from the codicil, and the deed is of no avail to him. This is an important question and is raised in its naked simplicity for the first time in this State. Under the common law the answer to the question was ready enough, if not entirely satisfactory. By the act of qualification the executor became vested with the whole personal estate and after the payment of debts and legacies was entitled to the surplus, unless it appeared on the face of the

will that the testator did not intend for the executor to have it. Therefore, and under that system, it is manifest that the act of qualifying as executor and taking the oath of office to execute the provisions of the will was irrevocable on his part—and the executor had to proceed to execute the will in all its parts and in its entirety. But the reason of the common law is of no force now, for executors, after the debts and legacies are paid, are trustees of the residuum for the next of kin.

But there is another view which leads us to the same conclusion as that of the common law, and as that view has been considered by this Court we will examine the decisions in reference to the matter:

In *Mendenhall* v. *Mendenhall*, 8 Jones, 287, the Court decided that a widow who qualified as executrix of her deceased husband and took upon herself the execution of the will, waived her right to dissent. The Chief Justice, Pearson, for the Court, mentioned four considerations, all or any of which he said seemed to the Court sufficient to sustain the ruling. Three of these considerations apply with peculiar force to the cases concerning widows in their relations with the estates of their deceased husbands, but one of them appears to us of general application. The chief justice said in that case: "Upon qualifying she assumes the duties and undertakes on oath to carry into effect the several provisions of the will, and it is inconsistent afterwards to do an act which defeats or in a great degree deranges the provisions of the will and disappoints the intention of the testator therein expressed." This ruling is affirmed in *Syme* v. *Badger*, 92 N. C., 706.

In *Yorkly* v. *Stinson*, 97 N. C., 236, the opinion in reference to the case of *Mendenhall* v. *Mendenhall* and *Syme* v. *Badger*, *supra*, is in the following language: "But in these cases the estoppel was held to apply to a widow who was

appointed to execute the will and of course in all of its provisions, and who accepted the office and undertook to carry out its directions with which the legal effect of a dissent was wholly inconsistent.

The subject is considered in the last cited case and leaves nothing now to be added."

It seems to us from the reasoning in the cases above cited (although in those cases the personal representatives were widows qualifying upon the estates of their deceased husbands under wills) that this Court has decided that the same principle would apply to the qualification of any person as executor; that the taking of the oath of the office of executor is irrevocable on his part; that he must execute the will in all of its provisions, and that, therefore, by such qualification he makes his election to take under the will where the testator has disposed of property belonging to the executor and at the same time and in the same will has given to the executor property of the testator.

The executor, R. J. Allen, having elected then, by his qualification, to take the land described in the codicil, the effect of this upon the interest of the defendant Johnston is next to be considered—the question involving the doctrine of constructive notice. Did Johnston have such notice of the will of the testator, Allen? He did not have actual notice as appears in the case agreed. We think he is not bound constructively with knowledge of the contents of the will. The principle of constructive notice arises out of the duty of any would be purchaser to reasonably, and in common prudence, see that his vendor has a prima facie good title; and because of this duty the purchaser will be affected with notice of the provisions of such deeds and other documents as are necessary to show the vendor's title. It was incumbent then upon Johnston to see to the right of R. J. Allen to convey the land to him. He reasonably would have per-

formed his duty if he had consulted, in the first place, the office of the register of deeds of Halifax County. He would have found there on registration a deed from the testator to R. J. Allen conveying the land mentioned in the codicil. He would not then have been required to look further. If the defendant Johnston, after he had examined the register's office, had been informed that the testator had left a will, the reasonable presumption would have been that the testator had not devised that which he had already conveyed by solemn deed.

We are of the opinion, therefore, that the mortgage, described in the case agreed and which was executed by the defendant Allen to the defendant Johnston, is a first lien upon the land.

The last question for our determination is as to the nature of R. J. Allen's interest in the land described in the codicil, that is, whether it was an estate upon condition or a fee simple in remainder charged with the payment of the $2,000 mentioned in the codicil. Whatever interest it may be when considered as between R. J. Allen and his next of kin, it is subject in the first place to the debt and mortgage of Johnston for the reasons already given. The intention of the testator as to whether he intended that the estate in the land should vest as a remainder in fee in his son R. J. Allen charged with the amount named in the codicil, or whether he intended that R. J. Allen should pay the amount for the benefit of the estate before the interest in the land should vest, is not clear. That being in doubt, we are disposed to adopt the first view, because the law favors the vesting of estates and leans to a view of a charge rather than to that of a condition precedent. Besides, there is no devise over to any other person, and in *Woods* v. *Woods*, 44 N. C., 290, this circumstance is declared to be a strong reason for giving to such words of limitation the idea of a charge rath-

er than of a condition precedent.    We think, then, that the
testator by his language intended to devise the land *i. e.*, the
remainder in fee after the death of the widow, to his son R.
J. Allen, *provided* he should pay to the estate $2,000.    That
being so, R. J. Allen took a vested estate.    *Woods* v. *Woods,*
*supra*; *Aston* v. *Galloway,* 38 N. C., 126; *Whitehead* v.
*Thompson,* 79 N. C., 450; *Patterson* v. *Patterson,* 63 N. C., 322.
*Erwin* v. *Erwin,* 115 N. C., 366, to the contrary, is in conflict
with the decisions of this Court and is a *dictum,* purely.

Considering then, that the estate was vested in R. J. Allen
and that the $2,000 mentioned in the codicil was a charge
upon the land, the plea of the Statute of Limitations set up
by the defendants is a bar to the plaintiff's action, except as
to Mrs. House.    *Rice* v. *Rice,* 115 N. C., 43.    Mrs. House
therefore is entitled to one fourth of the amount charged
upon the estate, but the debt secured by the mortgage of
R. J. Allen to Sterling Johnston is a first encumbrance on
the land.

To summarize, our conclusion is that R. J. Allen, by the
act of qualifying as executor, elected to take under the will;
that the estate mentioned in the codicil was not a condi-
tional one but a vested interest charged with the amount
mentioned in the codicil; that the plaintiffs, except Mrs.
House, are barred by the Statute of Limitations, and that
Mrs. House is entitled to one fourth of the amount charged
upon the land, but that she is to recover no part of her share
until the debt of Sterling Johnston secured by the mortgage
shall have been paid, that debt and mortgage being a first lien.

The judgment of the Court below is reversed, and the case
is remanded to be proceeded with according to law under
this decision.

                                                   Reversed.


CLARK, J., concurring:    I concur that the mortgage to
Sterling Johnston is valid.    Seeing the deed from M. A.

Allen to R. J. Allen on the records of the Register's office, he was not required to examine the will book to ascertain whether M. A. Allen had not devised the land to some one else after conveying it by deed to R. J. Allen.

R. J. Allen, having qualified as executor under the will of M. A. Allen, is bound to execute it as far as lies in his power. He was also a legatee in the will. He cannot claim "under the will and against it." By qualifying, he made his election. Now, what did the will direct as to the home place which had already been conveyed to him? It directed, first, that the testator's wife should have it for life. R. J. Allen is bound by that. Had it directed that at her death it should go to some one else, R. J. Allen would have been bound by it. Had it directed that at her death R. J. Allen should take it and pay $2,000 upon it, the $2,000 would have been a charge upon it. But none of these things did the will require. It provides that as to the land given to his wife "at her death"—not before—"if said R. J. Allen shall think proper to pay $2,000" for the land which had been left to the wife during her life "he shall have the privilege of doing so." Now, by qualifying as executor he assented that M. A. Allen's disposition of the land is valid. That disposition is to the testator's wife for life and "at her death" an option to R. J. Allen to take the land if he shall pay the sum of $2,000. Being an option he could exercise his choice either way, and still execute the will. If he had exercised this option by declining the land upon those terms, it would have been in accordance with the will, not against it, and the land would have gone into the residuary clause, if one, and, if not, the testator would have been intestate as to the remainder in said land on which the option was given R. J. Allen.

At the death of the wife of the testator, he elected to take the realty, which thereupon became charged with the afore-

said sum of $2,000 with interest from that date, said charge being subordinate, however, to the mortgage executed to Sterling Johnston. The time elapsing since the death of the testator's wife (in 1878) at which time R. J. Allen by the terms of the will "at her death" was given the option to take the property subject to the charge, or let it alone, has been sufficient to bar the plaintiff's claim upon said $2,000 except as to Mrs. House.

FAIRCLOTH, C. J., and DOUGLAS, J., dissent.