court of Travis county. Winnie v. Grayson, 3 Texas, 429."

In Seligson v. Gifford, 46 Tex. Civ. App. 566, 103 S. W. 416, by the San Antonio Court, and McDade v. Vogel, 173 S. W. 506, by the Galveston Court (writ of error refused), the express ruling is made that the statute has no application to a suit brought by a stranger to the proceeding sought to be enjoined. Cited in support of this ruling are Winnie v. Grayson, and Van Ratcliff v. Call, above.

In each of the above-cited cases it may be possible to uphold the decision upon grounds other than that the plaintiff was not a party to the judgment sought to be enjoined. It is clear, however, that in each case the court was strongly of the view that the statute had no application to such cases.

The following cases are directly in point, and their decisions can be upheld upon no other theory than that the statute does not apply to suits brought by a stranger to judgment in question. McCargo v. Smith, 23 Tex. Civ. App. 714, 58 S. W. 188, by the Fort Worth Court; Kinsey v. Spurlin, 102 S. W. 122, by the Austin Court; Long v. Knott, 203 S. W. 1127, by the Dallas Court.

The contrary doctrine was first held by the Austin Court in Brown v. Fleming, 178 S. W. 964. A writ of error was granted in that case, but was later dismissed without deciding the question, which, in the meantime, had become moot. 212 S. W. 483. This case was followed by the San Antonio Court in Thallman v. Bank, 181 S. W. 791, in which a writ of error was refused; and later by the Austin Court in Matthews v. Eyres, 206 S. W. 963.

The action of the Supreme Court in granting the writ in Brown v. Fleming and refusing the writ in Thallman v. Bank was had in the comparatively short space of 14 months, during which time the personnel of the Supreme Court was not changed. In granting the writ in the former case the following unequivocal notation was made on the Supreme Court's docket:

"We are of the view that article 4653 has no application to a case of this character."

In the light of these circumstances we do not feel that the refusal of the writ in the Thallman Case should be held conclusive upon the question. That case and Brown v. Fleming and Matthews v. Eyers are directly in conflict with McCargo v. Smith, Kinsey v. Spurlin, and Long v. Knott, above, are out of harmony with the principles announced in the above-cited cases by the Supreme Court, are, we think, unsound in principle, and should therefore be overruled.

We conclude that the question certified should be answered in the negative.

CURETON, C. J. The opinion of the Commission of Appeals answering certified questions adopted, and ordered certified to the Court of Civil Appeals.

DUNN et al. v. VINYARD.   (No. 408–3759.)

(Commission of Appeals of Texas, Section A. May 30, 1923.)

1. Wills ⟨⟩792(1)—Error not to submit issue of widow's election to take under will where evidence would justify from finding such fact.

In a suit by executrix of wife against the executors of her husband, and the devisees and legatees under his will, to partition the community estate and to appoint a receiver, where the issue as to whether the widow elected to take under the will of the husband was raised, if there was any evidence looked at in its most favorable light, from which the jury might have found that the widow elected to take under the will, it was error not to submit the issue to the jury.

2. Wills ⟨⟩792(1)—Evidence held sufficient to raise issue of widow's election.

In a suit by executrix of wife against executors of her husband, and the devisees and legatees under his last will and testament, to partition the community property and appoint a receiver, evidence held sufficient to raise the issue of the widow's election to take under the will of the husband.

3. Wills ⟨⟩778—"Election under will" defined.

An "election under will" means that a legatee or devisee under a will is put to the choice of accepting the beneficial interest offered by the donor in lieu of some estate which he is entitled to, but which is taken from him by the terms of the will.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Election.]

4. Wills ⟨⟩781—Party put to election must make choice regardless of relative value of two inconsistent rights.

When, by the express terms of the will, the party is put to an election, he must make a choice regardless of the relative value of the two inconsistent rights.

5. Wills ⟨⟩781—Compensating thing need not be of equal value to that taken away to uphold election.

To uphold an election under a will, the compensating thing need not be of a value equal to that taken away.

6. Wills ⟨⟩782(3) — Charges and provisions held not inconsistent with nor limitation of life estate.

A charge in a will for the support of testator's daughter, during her life, out of the rents and income of a life estate, and a provision that all of the property owned by the testator at his death should be kept intact as constituting the principal of his estate, and that

nothing should be sold or disposed of, and no partition of the estate should be made until after the death of his wife and daughter, and that the principal thereof and any surplus over and above the comfortable living and support for them should be invested in interest-bearing securities, *held* not inconsistent with the life estate of the widow or a limitation on her title, nor an interference with her free use of the income therefrom.

**7. Wills ⬅︎➡792(1)—Question of election one of fact.**

The question of election under a will is one of fact for the jury.

**8. Wills ⬅︎➡792(1)—An election not expressly made becomes question of intention to be decided from all facts and circumstances of particular case.**

An election under a will may be express or implied, and when not expressly made it is a question of intention and must be decided from all the facts and circumstances of the particular case.

**9. Wills ⬅︎➡792(1, 3)—Knowledge of facts and intent to elect essential.**

In the absence of statutory regulation, two things are generally necessary in order that acts relied upon will amount to an election: First, the party must have knowledge of his rights, that is, he must have had knowledge of the condition and extent of the estate and of his duty to choose between the inconsistent rights; second, that he intended to elect as shown by his words and acts viewed in the light of all the circumstances.

**10. Wills ⬅︎➡792(5)—Evidence held sufficient to show an election by the widow.**

In a suit by executrix of wife against executors of her husband to partition the community estate and to appoint a receiver, where the issue of the election of the widow to take under the will of her husband was raised, evidence *held* sufficient to show an election.

**11. Wills ⬅︎➡790—Election not required before probate.**

One is not required to elect under a will before it is probated, but it may be so made.

**12. Wills ⬅︎➡794—Acts of widow in joining in application for probate of will of husband, taking oath as executrix and filing inventory, held indicative of her election to take thereunder.**

The acts of a widow in joining in the application for the probate of the will of her deceased husband, the taking by her of the oath as executrix, and the filing of an inventory and appraisement in which all the property was listed as belonging to the estate of her deceased husband, indicates an election on her part to take under the terms of the will.

**13. Wills ⬅︎➡792(1) — Weight given acts of party sought charged with election determined largely by circumstances of particular case.**

The weight to be given to any act or declaration of the party sought to be charged with an election under a will, when taken in evidence, must be determined largely by the cir-

cumstances of each particular case, and the question whether the terms of the will clearly require an election and the extent of the party's knowledge as to his rights and condition of the estate are of much importance in considering the conclusiveness of his actions, especially with reference to the formal acts of probating the will and qualifying as executor.

**14. Wills ⬅︎➡792(1) — Peremptory instruction for plaintiff in suit to partition community property held erroneous.**

Where the question of the election of the widow to take under the will was raised, and where there was evidence from which the jury might have determined that the widow was so elected, it was error for the court to give the peremptory instruction for plaintiff.

**15. Witnesses ⬅︎➡159(1)—Testimony of executors held incompetent.**

Where, in a suit by executrix of wife, and in her individual capacity as legatee and devisee against the executors of her husband, to partition the community estate, in the absence of a showing that the two interests joined in her constituted a severable cause of action, the testimony of defendants as to transactions they had with plaintiff's testatrix, and as to statements she made to them, *held* inadmissible under Rev. St. art. 3690.

**16. Partition ⬅︎➡53—Not erroneous for court to appoint receiver in suit to partition community property.**

It is not error for the court to appoint a receiver in a suit by executrix of wife against the executors of her husband to partition community estate on the ground that the property is in the hands of independent executors.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Suit by Leana Vinyard, individually and as independent executrix, against W. F. Dunn and others. From a judgment of the Court of Civil Appeals (234 S. W. 99) reforming and affirming a judgment for plaintiff, defendants bring error. Affirmed in part, and reversed and remanded in part.

Dexter Hamilton, of Dallas, R. E. Prince, of Corsicana, and Phillips, Townsend & Potter, of Dallas, for plaintiffs in error.

Collicutt & Johnson and Richard Mays, all of Corsicana, for defendant in error.

GERMAN, J. Capt. E. E. Dunn died November 9, 1917, leaving a will, which was dated October 19, 1916. His widow, Mary E. Dunn, survived him, and also children and descendants of children by two former wives. He and Mary E. Dunn were married June 11, 1876, but had no children. All of the property involved in this litigation was their community property. Item third of Captain Dunn's will provided:

"I give, devise and bequeath to my beloved wife Mrs. Mary E. Dunn all and entire my estate and property, real, personal and mixed of

which I shall die seized and possessed, and to which I may be in any way entitled at the time of my death (except the property devised and bequeathed to my son William F. Dunn in item number eighth of this will). To have and to hold said estate and property unto her the said Mary E. Dunn for and during the full term of her natural life, she to have and receive, use and enjoy the rents, revenues, profits, interest and income of said property for and during the term of her natural life."

This bequest was charged with the support of testator's daughter, Mary L. Wright, during her life, out of the rents, revenues, and income from said property.

Item fourth of the will provided that all of the property owned by testator at his death should be kept intact, as constituting the principal of his estate, and nothing should be sold or disposed of until the death of his wife and daughter. Item sixth provided that no partition of the estate should be made until after the death of his wife and daughter, and that the principal thereof and any surplus over and above a comfortable living and support for his wife and daughter should be invested in interest-bearing securities. Item eleventh of the will is as follows:

"The property and estate devised and bequeathed by this will is the community property of myself and my wife Mary E. Dunn, and by this will I am disposing of said estate and property as a whole, and as if the whole title and right to the same was in me, I have consulted my wife Mary E. Dunn on this point and she assures me that she is perfectly willing to accept and receive the provision I have made for her in this will, and I hope and trust that she will elect to take under this will."

Mary E. Dunn, W. F. Dunn, a son, O. E. Hyndman, a son-in-law, and J. N. Edens, a grandson, were appointed joint independent executors of the will. By a codicil dated April 10, 1917, Mary E. Dunn and J. N. Edens were designated as the persons who were to have sole power and authority to draw and sign checks for "such current expenses as may be necessary to carry out the terms of said will." In the absence or inability of Edens to act, W. F. Dunn was authorized to draw and sign checks with Mrs. Dunn. It is stated that:

"This provision is made as a matter of convenience in order that it may not be necessary to have said checks signed by all the executors of said will."

The will also provided:

"I leave to the loving care and attention of Orville E. Hyndman and his wife, E. Gertrude Hyndman, my beloved wife Mary E. Dunn, and it is my earnest desire that my said wife and said Orville E. Hyndman and his wife E. Gertrude Hyndman shall live together so long as it shall be agreeable to them and each of them, and I trust and pray that this may be as long as they may live."

Testator further provided that if any of his children, or any beneficiary of the will, should contest same, then such one should forfeit the share of the estate coming to him or her under the will.

Application for probate of the will was filed December 3, 1917, by John H. Rice, as attorney for Mary E. Dunn, and the other persons named as executors of the will. Order admitting the will to probate was made February 5, 1918, and February 18, 1918, the codicil was probated. On March 19, 1918, Mrs. Dunn and the other executors took the statutory oath. On the same date these parties produced an inventory of the estate, signed and sworn to as required by law, in which the property involved in this litigation was set out as a part of the estate of E. E. Dunn, deceased. This inventory was approved by the probate court on the same date.

Mrs. Mary E. Dunn died April 13, 1918, leaving a will dated August 25, 1917, in which she bequeathed to her sister, Mrs. Leana Vinyard, all property owned by her, which included 75 acres of land owned by Mrs. Dunn in her separate right. Mrs. Vinyard was named independent executrix. This will was probated August 14, 1918, and Mrs. Vinyard took the necessary oath.

This suit was brought in the district court of Navarro county by Mrs. Leana Vinyard, individually and as independent executrix under the will of Mary E. Dunn, against W. F. Dunn, J. N. Edens, and O. E. Hyndman, individually and as executors under the will of E. E. Dunn, and against the other devisees and legatees under Capt. Dunn's will. The basis of her claim was that, the estate consisting entirely of community property, Mrs. Dunn was entitled to one-half thereof, which passed by her will to her (Mrs. Vinyard). She also sought to recover one-half of certain advancements made by Captain Dunn during his lifetime to his children, and prayed for the appointment of a receiver.

Plaintiffs in error here, who were defendants in the trial court, relied upon the claim that Mary E. Dunn had elected to take under the will of Captain Dunn, and therefore she had no interest in the property to pass by her will to Mrs. Vinyard.

The trial court awarded Mrs. Vinyard a one-half undivided interest in the property in controversy, and to plaintiffs in error the other one-half, charged with the payment of $2,730.35, being one-half of advancements made by E. E. Dunn to his children out of community property. J. N. Edens was appointed receiver to take charge of the property until partition was effected. The trial was before a jury, but the trial court, being of the opinion that the testimony did not warrant a finding that Mrs. Dunn had elected to take under the will, instructed a verdict in favor of Mrs. Vinyard.

On appeal the Court of Civil Appeals at Texarkana affirmed the judgment of the trial court, except as to the right of Mrs. Vinyard to recover anything on account of advancements made by E. E. Dunn to his children, and reformed the judgment to this extent. 234 S. W. 99. Petitions for writs of error were filed by both sides, and each granted.

[1, 2] The first assignment of error relates to the action of the trial court in instructing the jury to find a verdict in favor of defendant in error. If there was any evidence, looked at in its most favorable light, from which the jury might have found that Mrs. Dunn elected to take under the will, it was error not to submit that issue to the jury. We think the evidence sufficient to raise this issue.

[3-5] The doctrine of election under a will is too familiar to require a general discussion. Briefly it may be said that where one has a valid claim to property which is disposed of by will (as in the case of the surviving wife in community property); in violation of such right, and at the same time other property to which the claimant would not be entitled is devised to the claimant, an election becomes necessary. In other words, an election means that a legatee or devisee under a will is put to the choice of accepting the beneficial interest offered by the donor in lieu of some estate which he is entitled to, but which is being taken from him by the terms of the will. When by the express terms of the will the party is put to an election, he must make a choice regardless of the relative value of the two inconsistent rights. To uphold an election the compensating thing need not be of value equal to that taken away. Smith v. Butler, 85 Tex. 130, 19 S. W. 1083. It may be, and often is, true that the party making the election is prompted to do so by considerations other than the value of the estate or property actually received under the will. Some of the difficulties usually encountered in cases of this kind are avoided by reason of the explicit language of the will itself. Item eleventh expressly declares that it is the purpose to dispose of the whole of the community estate, and Mrs. Dunn is expressly advised that she is put to an election.

[6] It is our construction of item third of the will that it gave to Mrs. Dunn a life estate in the entire estate and property of Captain Dunn, except the 40 acres of land given to his son, and conferred on her the full use and enjoyment of all rents and revenues from the whole of said estate for and during her natural life. This was obviously such an estate as she was not entitled to at law, except for the will. We do not think the charge upon this estate in behalf of Mrs. Wright or the provisions in items fourth and sixth with reference to sale and partition of the property and the investment of any surplus income are inconsistent with Mrs. Dunn's life estate, or a limitation on her title, nor do they interfere with her free use of the income from the estate. In view of the value of the whole property and the needs of Mrs. Dunn and Mrs. Wright, Capt. Dunn must have known that he was making ample provision for their support. We think it but fair to say that the entire will clearly indicates a desire on the part of Capt. Dunn to generously provide for Mrs. Dunn during her lifetime, and evidences the tenderest regard for her comfort and welfare.

[7, 8] The question of election under a will is one of fact for the jury. Mayo v. Tudor's Heirs, 74 Tex. 474, 12 S. W. 117. An election may be express or implied. When not expressly made, it is a question of intention and must be decided from all the facts and circumstances of the particular case. A valuable discussion of all the general principles, with authorities showing their application, will be found in the note to Owens v. Andrews, 49 L. R. A. (N. S.) 1072-1108.

[9, 10] In the absence of statutory regulation, it may be generally said that two things are necessary in order that acts relied upon will amount to an election: First, the party must have had knowledge of his rights; that is, he must have had knowledge of the condition and extent of the estate, and of his duty to choose between the inconsistent rights; second, that he intended to elect, as shown by his words and acts, viewed in the light of all the circumstances. Defendant in error contends that this first condition was not met. With this we do not agree, as there was ample evidence to warrant a finding to the contrary. Judge Rice, who wrote the will of E. E. Dunn and also the will of Mrs. Dunn, testified that on three different occasions he discussed Capt. Dunn's will with Mrs. Dunn, and that he explained to Mrs. Dunn fully the provisions and purport of the will. On each of the three occasions she expressed herself satisfied with the terms of the will. It is not disputed that the will was read in the presence of Mrs. Dunn and the other interested parties shortly after the death of Capt. Dunn. In addition, Judge Daviss testified to a conversation with Mrs. Dunn shortly before her death, and after the will had been probated, in which she stated Capt. Dunn had told her what his will was, and in which she also stated that she had decided to sign a certain paper, which, according to her own language, "was a paper by which she was to agree to the disposition of the property made by Captain Dunn's will." Having a community interest in all of the property, it must be presumed that she knew of its condition and value.

[11] We will briefly notice some of the evidence tending to show an intention on the part of Mrs. Dunn to accept under the will. First is the testimony referred to above to the effect that Mrs. Dunn expressed herself

as satisfied with the terms of the will. She was not required to elect under the will before it was probated, but an election could be made before the probate. 40 Cyc. p. 1976. The jury may have inferred from all the facts and circumstances that this attitude of mind continued to the date of her death. Her statement, made a few days before her death, to the effect that she had decided to sign a paper which she understood was an agreement to the disposition of the property as made by the will, indicates that her mind may have come to a settled conclusion in the matter. Furthermore, Judge Rice testified that, at the time he called on Mrs. Dunn to get her affidavit to the inventory, she expressed "some dissatisfaction at what she seemed to think was a delay in getting the will probated and the inventory filed, so that she could begin to act as one of the executors."

The evidence is that, after the death of Capt. Dunn, Mrs. Dunn, Mrs. Wright, and Mamie Petty, who was employed to assist in the household, continued to live in the homestead to the date of Mrs. Dunn's death. Up to some time in February, 1918, all expenses were paid by money on hand at the death of Capt. Dunn. During this time Mrs. Dunn signed checks totaling $235.90, and W. F. Dunn drew checks, which he stated were for Mrs. Dunn's use, totaling $416.10. Just what part of these amounts were appropriated by Mrs. Dunn for her own personal use is not certain. She had a right to the use of the homestead, and was entitled at law to one-half of the moneys on hand, as well as an allowance; but the jury had a right to consider whether these benefits were appropriated by her as in her own individual right, or as a part of the general estate, and whether, under all the circumstances, she thereby indicated an intention to elect.

A few days before her death, Mrs. Dunn joined J. N. Edens in signing two checks, aggregating $5,100, which were invested in an interest-bearing note, under the provisions of the will. Mrs. Dunn had knowledge of the use to which the checks were put, and consented thereto. Under the will, the revenues from this investment would be her property. The jury had a right to decide how far this transaction, under all the circumstances, tended to show an election by Mrs. Dunn.

[12] Counsel for plaintiffs in error stress the importance of the acts of Mrs. Dunn in joining in the application for the probate of the will and codicil, the taking of the oath as executrix, and the filing of an inventory and appraisement in which all the property was listed as belonging to the estate of Capt. Dunn, as indicating an election on her part. That such acts are regarded as cogent evidence of an intention to elect is established by numerous authorities. There are cases holding that acts of this character, especially in the absence of evidence showing a contrary intention, conclusively establish an election. Ross v. First Presbyterian Church, 272 Mo. 96, 197 S. W. 561; Moseley v. Bogy, 272 Mo. 319, 198 S. W. 850; Allen v. Allen, 121 N. C. 328, 28 S. E. 513.

The rule in our state, which we think is the correct one, is stated by Cyc. vol. 40, pp. 1978, 1979, as follows:

"An election to take under the will may be manifested by qualifying and acting as executor, administrator, cum testamento annexo, or trustee under it, especially where there are other circumstances indicating an intention to take under the will; but the fact that one qualifies and acts as executor is not necessarily inconsistent with an intention to renounce the provision of the will in favor of the person so acting, and hence does not necessarily amount to an election to take under the will."

[13] The weight to be given to any act or declaration of the party sought to be charged with the election, when taken in evidence, must be determined largely by the circumstances of each particular case; and a careful consideration of the authorities shows that the question of whether or not the terms of the will clearly require an election and the extent of the knowledge of the party as to his rights and the condition of the estate are regarded as of much importance in considering the conclusiveness of his actions, especially with reference to the formal acts of probating the will and qualifying as executor. So it is that the probative force of all of the matters referred to in this opinion as indicating an intention to elect on the part of Mrs. Dunn should be considered in connection with the clearly expressed purpose and desire of the testator and the relation sustained by Mrs. Dunn to the various parties concerned. This is an important reason, in the light of the testimony referred to, why the question of an election by Mrs. Dunn to take under the will should have been submitted to the jury.

As showing what acts and circumstances have been held sufficient to show an election, we refer to the following cases: Pryor v. Pendleton, 92 Tex. 384, 47 S. W. 706, 49 S. W. 212; Smith v. Butler, 85 Tex. 130, 19 S. W. 1083; Rogers v. Trevathan, 67 Tex. 406, 3 S. W. 569; Skaggs v. Deskin (Tex. Civ. App.) 66 S. W. 793; Torno v. Torno, 43 Tex. Civ. App. 117, 95 S. W. 762; Chace v. Gregg (Tex. Ciy. App.) 31 S. W. 76, affirmed 88 Tex. 552, 32 S. W. 520; In re Emerson's Estate, 191 Iowa, 900, 183 N. W. 327, and cases cited above.

[14] The court erred in giving the peremptory instruction. Harpold v. Moss, 101 Tex. 540, 109 S. W. 928; Choate v. Ry. Co., 90 Tex. 88, 36 S. W. 247, 37 S. W. 319.

[15] Plaintiffs in error urge the proposition that the trial court erred in refusing to allow W. F. Dunn, J. N. Edens, and O. E.

Hyndman to testify to statements made by Mrs. Mary E. Dunn and transactions with her while acting as executrix of the Dunn will. The trial court held that such statements and transactions came under the prohibition of article 3690 of our Revised Statutes, and this holding was affirmed by the Court of Civil Appeals.

Dunn, Edens, and Hyndman were sued in their capacity as executors under the will of E. E. Dunn. The statute would present a bar to proof of statements by or transactions with the testator, or intestate, for whom they were acting, to wit, Capt. Dunn; but this relation constituted no reason why statements by or transactions with Mrs. Dunn were not admissible. However, Mrs. Vinyard was suing in both her individual capacity and as independent executrix of the estate of Mrs. Mary E. Dunn. In her individual capacity she was not suing as the "heir" of Mrs. Dunn, but as sole legatee and devisée. The statute does not include legatees and devisees. Newton v. Newton, 77 Tex. 508, 14 S. W. 157, and numerous other authorities. Plaintiffs in error did not contest the right of Mrs. Vinyard to sue in her capacity as independent executrix, as provided by article 1906 of the Statutes, and it will therefore be held that she had a right to sue and was properly a party in her capacity as executrix. This being true, in the absence of a showing that the two interests joined in her constituted a severable cause of action, the statute applied, and the testimony was not admissible. Spencer v. Schell, 107 Tex. 44. Plaintiffs in error insist that, while the petition denominates Mrs. Vinyard as plaintiff in the capacity of an executrix, yet it discloses very plainly that the real suit is in her right as a legatee, and therefore the case comes within the rule announced in Caffey's Ex'rs v. Caffey, 12 Tex. Civ. App. 616, 35 S. W. 738. For the reason stated above, they cannot now assert this claim.

It is insisted by plaintiffs in error that this proceeding is one in effect to set aside the judgment of the probate court admitting the will of E. E. Dunn to probate. We are unable to see that this proposition is applicable. Capt. Dunn had no legal right to dispose of the interest of Mrs. Dunn in the community property, and therefore such disposition cannot be upheld except on the theory of election by Mrs. Dunn. The judgment probating the will could not impart to it sufficient legal power as to divest her of her title. Her action alone could do this.

[16] The only complaint made by plaintiffs in error to the action of the court in appointing a receiver is as to the lack of power in the court to appoint a receiver, because the property was in the hands of independent executors. This assignment is not well taken. Pomeroy's Equity Jurisprudence (4th Ed.) book 4, p. 3564. Under the assignments presented, we are not required to determine whether the facts of the case authorized the appointment of a receiver.

The Court of Civil Appeals reformed the judgment of the trial court, and denied defendant in error the right to recover any part of the advancements made by Capt. Dunn to his children several years before his death. In her petition for writ of error, Mrs. Vinyard attacks this holding of the court. The Court of Civil Appeals decided this question correctly, and in addition to the authorities cited by it we refer to the case of Lindly v. Lindly, 109 S. W. 467, affirmed in 102 Tex. 135, 113 S. W. 750.

We recommend that the judgment of the Court of Civil Appeals, in so far as it denied the right of Mrs. Vinyard to recover a share in advancements made by E. E. Dunn, be affirmed, and that in other respects it be reversed, and the cause remanded.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed in part, and otherwise reversed, and cause remanded to the district court, as recommended by the Commission of Appeals.