LEWIS CORY'S executor

*v.*

ELIZA B. CORY'S administrator.

1. After a legatee has made her election under the will and acted thereon for seventeen years, it is too late for her administrator to elect differently.

2. Where all of decedent's estate was given to his wife (who was also an executrix) for life, with power of disposition during her lifetime, and with an absolute gift over of most of the estate after her death—*Held*, that the power of disposition did not enlarge her estate to a fee.

3. Where a life tenant has destroyed or lost the evidence of the amount of the principal fund, she must, for the benefit of the remaindermen, be charged with the last statement of the principal ascertainable, and interest thereon from the time of her decease.

*Mr. T. N. McCarter*, for complainant.

*Mr. Garret Berry* and *Mr. C. Parker*, for defendant.

BIRD, V. C.

Lewis Cory died in 1863, leaving no children, leaving a widow, Eliza B., also a large amount of real and personal estate, all of which he disposed of by a last will and testament. A large proportion, if not all of the estate, was given to Mrs. Cory, for and during her life, at least, if not absolutely. She was made executrix, two others executors. To her was given the sole charge and custody of the estate during her lifetime. She proved the will, took charge of the estate, and in the year 1880 died possessed of securities valued at over $80,000. These were all in her own individual name. When Mrs. Cory proved the will and qualified as executrix, Thomas Douglas, one of the executors, joined with her in those duties. The other persons named as executors never took any steps towards administering the estate. Charles C. Pratt became the administrator of her estate. Thomas Douglas survived Mrs. Cory, and, as executor, he brings

his suit against Mr. Pratt, as administrator, to recover all the securities found in her possession at the time of her death. Both parties claim them under the will of Lewis Cory, deceased.

I think a few facts will suffice to present the rights of the parties. In the year 1849 Mr. Cory and his wife were living in Rahway, N. J. There he was engaged in the jewelry trade. That year he moved to California. Before going he had prepared the frame of a house, which he took with him. He carried along also many articles for trade or traffic. Soon after reaching California the frame was erected into a house. In it they lived. There he continued his trade as jeweler and watchmaker. Mrs. Cory presided in the household. Mr. Cory also engaged in real estate transactions, and became a money-lender. He prospered until his death. He was then the owner of considerable real estate and personal securities, the precise value of which it would be difficult to determine; and whilst there has been an approximation, it would be quite difficult to establish exactly how much Mrs. Cory realized from either.

The parts of the will which must influence the judgment, are as follows:

" *Item.* I give, devise and bequeath all my real and personal estate, whatsoever and wheresoever, unto my beloved wife, Eliza Cory, for her sole use and benefit for and during the period of her natural life, to be under her control and used by her as she may see fit to use the same; and in case she should find it necessary or see fit to dispose of any part or all of the same, I do hereby authorize, empower and direct my said wife, as my executrix hereinafter named, to sell, deed and dispose of the same, or any part thereof, from time to time as she may deem proper, and to make good and sufficient deed or deeds for any part or the whole of my estate so sold or conveyed.

" *Item.* After the death of my said wife it is my will, and I do order my executors hereinafter named, to sell the whole of my estate, real and personal, remaining at the decease of my wife, or so much of it as is in California, and dispose of the proceeds as follows, to wit:

" To my brother-in-law, William F. Brown, or his heirs, I give the sum of three thousand dollars   *   *   *   I also give to him my salt meadow lot, hereinafter more fully described, to him, his heirs and assigns forever.

" To my brother, Henry A. Cory, I give the sum of three thousand dollars, to him or his heirs for their own benefit and use.

" To my brother, Uzal Cory, I give the sum of three thousand dollars, to him or his heir~

Cory v. Cory.

"To my sister, Ann Cory, I give three thousand dollars.  As my sister Ann has no heirs, should she not be living at my death and the death of my wife, I give her share &c.

"To my brother, Silas D. Cory, I give the sum of two thousand dollars, for the use and benefit of his heirs.

"To the two daughters of my sister, Martha Beers, I give the sum of one thousand dollars to each of them &c.

"To my friend, Julia A. Webb, wife of George F. Webb, I give the sum of five hundred dollars.

"The balance of my estate, after paying the above legacies, I give and bequeath unto my brothers, Henry A. Cory, Uzal Cory, and my brother-in-law, William F. Brown."

Lastly he appoints his executrix and executors, and says :

"My wife, Eliza Cory, to act and to have the sole custody and charge of my estate, without giving bonds to any person or court, during her lifetime, and my executors to take the charge thereof after the death of my wife."

Then the testator describes his salt meadow and other real estate in Rahway, N. J., and his bank stock—

"And about sixty shares of New Jersey Railroad and Transportation Company, all of which I wish my executors to take charge of, and faithfully carry out my last will and testament."  .

As directed, Mrs. Cory did take charge of the entire estate, and in a comparatively short time conveyed all the real estate in California and exchanged all securities for new ones, or collected the amounts due and re-invested all in her own individual name ; so that at the period of her death there was nothing connected with these securities themselves by which it could be determined from whence the money which they represent originally came ; whether it was all, originally, Mr. Lewis Cory's or not, or whether, at the time of his death, a part of it was Mrs. Cory's by descent or by acquisition or not ; and so that, if Mrs. Cory was entitled to any portion of her husband's estate under the laws of California, it would be equally difficult to establish, with satisfaction, what portion.

But I think the embarrassment which this condition of the estate would otherwise entail, has been wholly overcome by the

Cory v. Cory.

action of Mrs. Cory herself. What she did with reference to the estate must have been done with all these considerations in view. She certainly had her own personal rights in full contemplation. Those who claim any portion of this estate through her under, the statute of distributions, are in all respects bound by her acts. They can claim nothing beyond what she claimed. We can only judge of her claims by what she said and did after her husband's death. I think Mrs. Cory very early employed counsel in California. It is in evidence that she took the written opinion of her counsel in New Jersey soon after her return to this state, respecting her rights and powers under the will.

First, then, I think it is incontrovertibly established that Mrs. Cory claimed, and took possession of, all the property out of which came what she left at her death, under and by virtue of the will of her husband. This was the incipient step, and from it alone all the rights of the defendants are to be traced and judged. If Mrs. Cory had any individual, marital or legal rights with respect to any of this property, other than what was given by the will, she never in any manner asserted them. She proved the will of her husband. She proceeded to collect and take possession of all the estate under the will. If she had a separate estate, she allowed it to be swallowed up in the mass of her late husband's estate. If the laws of California secured to her one-half of all that he left, she never exhibited her claim under the law. From the first she treated the entire mass as one and indivisible.

Therefore, I conclude that Mrs. Cory, having accepted the provisions of the will, and made her election, it is now (seventeen years having elapsed and she being dead) too late for her administrator to elect differently; too late to say a portion of this estate was hers independently of her husband, or that she was entitled to one-half by statutory provision. Not only does the doctrine of election apply, but that of estoppel also. It would be quite difficult to meet with a clearer case under either of these heads. See *1 White & T. Lead. Cas. in Eq. 503 and notes; Hyde v. Baldwin, 17 Pick. 303; Smith v. Smith, 14 Gray 532; Kearny*

v. *Macomb, 1 C. E. Gr. 189, 195.* As to the estoppel: *Kerr on Fraud & Mis. 127 ; Big. on Estop. 425, 437.*

It being established that Mrs. Cory took and held all this property under the will as executrix, the second inquiry is, what individual rights she had to that property under the will. The complainant awards to her a life estate only ; the defendant an absolute and unqualified one, and insists that this inevitably follows the power of disposition conferred. The defendant thinks he is supported in this by the cases of *Courter* v. *Howell, 6 Stew. Eq. 80 ; Barford* v. *Street, 16 Ves. 135 ; Irwin* v. *Farrer, 19 Ves. 86 ; Downing* v. *Borden, 7 Vr. 460 ; S. C., 6 Vr. 74 ; Kendall* v. *Kendall, 9 Stew. Eq. 91 ; Annin* v. *Van Doren, 1 McCart. 135.*

These cases would be decisive did not three conditions arrest the attention—the fact that a life estate is distinctly created ; the fact that Mrs. Cory is only authorized to sell as executrix ; and the fact that a large amount of the estate is given absolutely, after her death, to his and her near relations. These considerations cannot be disregarded. Every intelligent individual, unaccustomed to legal distinctions, would at once declare that this testator contemplated a large estate remaining after the death of his widow. Hence it is well understood that every part of the will every word, indeed—must stand. *Collet* v. *Lawrence, 1 Ves. Jr. 268.* Lord Eldon said : " Words are not to be rejected unless you cannot by any possibility give them a rational construction." *Chambers* v. *Brailsford, 19 Ves. 652, 654; Gray* v. *Minnethorpe, 3 Ves. 103 ; Constantine* v. *Constantine, 6 Ves. 100.* This plain rule cannot be observed, and at the same time give to Mrs. Cory an unlimited estate. I am constrained to conclude that she only took a life estate, and that all the property which came to her hands and which she did not consume in using, passes, by force of the will, to his representative and not to hers.

Considering all the parts of the will, this view is not at all inconsistent with any of the cases presented by counsel for defendant. I do not find in any of them the power of sale conferred on the life tenant as executrix, as it is here. This power of sale was for the benefit of the estate generally, or of the life

Cory v. Cory.

tenant specially, either according to the supposed necessity or her
own fancy ; but whether it was necessity or whim, she was not
authorized to exercise the power in her own name, but only as
executrix.　How can I strike out that phrase or say it has no
significance ?　It seems to me that Mrs. Cory used this property
as a tenant for life, and sold or had the power of sale, as a trus-
tee.　I believe, too, that this reasonable view of the case is sus-
tained by many authorities, the most of which also recognize the
doctrine of the cases cited by counsel of defendant.　In *Jack-
son* v. *Robins, 16 Johns. 537, 588,* Chancellor Kent said : " We
may lay it down as an incontrovertible rule that when an estate
is given to a person generally, or indefinitely, with a power of
disposition, it carries a fee ; and the only exception to the rule is
where the testator gives to the first taker an estate for life only,
by certain and express words, and annexes to it a power of dis-
posal.　In that particular and special case the devisee for life
will not take an estate in fee, notwithstanding the distinct and
naked gift of a power of the disposition of the reversion.　The
distinction is carefully marked and settled in the cases."　This
language is quoted approvingly in *Downey* v. *Borden, 7 Vr. 460.*

In *Kendall* v. *Kendall, 9 Stew. Eq. 91,* there was no gift over,
and this is pointed to by the chancellor, which is regarded as of
importance in other cases.　*Mason's Exrs.* v. *Trustees of M. E.
Church, 12 C. E. Gr. 47 ; Gulick's Exrs.* v. *Gulick, 10 C. E.
Gr. 324, 328.*

I think the doctrine established in *Jackson* v. *Robbins,* and in
*Downey* v. *Borden,* is fully supported in *Stuart* v. *Walker, 72
Maine 145 ; S. C., 11 Rep. 533,* and in *Giles* v. *Little, 14 Otto
291,* and in many other cases.

Then, is the entire fund now on hand to be treated as princi-
pal and to go to the complainant as surviving executor, or part
of it as accumulations by way of interest, which was Mrs Cory's
in her lifetime, and which passes to the defendant as her admin-
istrator ?　I think the interest became Mrs. Cory's absolutely,
and whatever can with reasonable certainty be said to be interest,
the defendant should retain.　What, then, is principal and what
interest ?　This cannot be determined with certainty.　But be-

cause the life tenant destroyed the evidences of the original amounts, or surrendered them without keeping accounts, the rights of innocent third parties should not be lost or barred, so long as funds enough are found in her possession. A trustee cannot be heard to plead his own neglect in support of his own claim as between himself and *cestui que trust*. I think in such cases the duty of the court is to charge the trustee with the last item that may be supposed to be principal. Being governed by this principle I conclude that at the time of Mrs. Cory's death, she had $52,000 in her hands belonging to the estate of Lewis Cory, deceased, and that of the securities now in the custody of defendant, I will advise that he deliver sufficient to make that sum, or their equivalent in cash current funds, with interest from the day of her death, unless such securities bear interest.