## TRIPP v. NOBLES.

(Filed September 27, 1904).

1. WILLS—*Election—Executors and Administrators.*

   Where a husband wills land belonging to his wife to her for life, together with certain personal property, and she qualifies as administratrix with the will annexed, she is estopped from afterwards claiming title to the lands devised other than under the will.

2. WILLS—*Election—The Code, secs. 2116, 2118.*

   Where land is charged with debts, the owner has no power by an election to take under a will other property and surrender the property charged, so as to permit it to pass to others discharged of such debts.

   WALKER and DOUGLASS, JJ., dissenting in part.

ACTION by W. H. Tripp against S. J. Nobles and others, heard by *Judge M. H. Justice* and a jury, at March Term, 1904, of the Superior Court of PITT County.

This is a petition filed by the plaintiff, executor of Mary Nobles, deceased, for license to sell her real estate to make assets for the payment of her debts. The defendants are her heirs at law. The petition contains the usual averments prescribed by the statute in such cases. The defendant, S. J. Nobles, filed an answer to the petition, denying the material averments therein. The Clerk, upon the coming in of the answer, transferred the cause to the civil issue docket for trial upon the issues raised by the pleadings. The only issues and finding thereupon pertinent to the exceptions are: "Did Mary Nobles die in possession of and holding title in fee to the lands described in the petition?" This issue was by consent anwered "Yes." "Is the plaintiff estopped to allege title in Mary Nobles at the time of her death of the lands described in the complaint?" The jury, under instruction of the Court, answered the second "No." From a judgment for the plaintiff the defendant, S. J. Nobles, appealed.

*Jarvis & Blow*, for the plaintiff.
*Skinner & Whedbee*, for the defendants.

CONNOR, J. The land described in the petition was the property of Simon J. Nobles, the husband of plaintiff's testatrix, and father of the defendants. He conveyed it to Macon G. Moye, who immediately conveyed to said Mary J. Nobles.

Ten years thereafter the husband, Simon J. Nobles, executed his will, bequeathing to his wife, the said Mary, all of his personal property, of the value of $100, and devising to her the land conveyed, as aforesaid, for her life, remain-

der to his son, the defendant, S. J. Nobles, subject to a charge of $126 in favor of his daughter, Florence L. Moye, and $172 in favor of another daughter, C. F. Crawford, both of whom are defendants herein. Said Simon J. died March, 1891, and his widow, the said Mary, offered the will for probate and qualified as administratrix *cum testamento annexo.* In her application for probate of said will and letters of administration she set forth the value of the estate as $600, of which "$500 is real estate and $100 is personal property." She further set forth that "Simon J. Nobles, Florence L. Moye and Mary Nobles, the widow, are entitled as heirs and distributees." The said Simon J. and wife, Mary, resided on said land during the life of the former, and after his death she remained in possession until her death, November 19, 1902. She retained the personal property bequeathed to her in the will of her said husband. The said Mary Nobles left a last will and testament appointing the plaintiff executor, which was duly admitted to probate. She made no disposition of said land in her will. The defendant, S. J. Nobles, insists that by proving the will of her husband and qualifying as his administratrix *cum testamento annexo,* and taking and retaining the personal property, the said Mary elected to take thereunder, and that she and her representatives are thereby estopped from making any claim to the land inconsistent with the provisions of the will.

*Gaston, J.,* in *Melchor v. Burger,* 21 N. C., 634, says: "Ever since the case of *Noyes v. Mordaunt,* 2 Ves., 581, which was decided in 1706, it has been holden for an established principle of equity that where a testator by his will confers a bounty on one person and makes a disposition in favor of another *prejudicial* to the former, the person thus prejudiced shall not insist upon his old right and at the same time enjoy the bounty conferred by the will.

The intention of the testator is apparent that both disposi-
tions shall take effect, and the conscience of the donee is
affected by the condition thus implied that he shall not de-
fraud the design of the donor by accepting the benefit and
disclaiming the burden, giving effect to the disposition in
his favor and defeating that to his prejudice." The doc-
trine is so strongly fixed in our jurisprudence, and so uni-
formly adhered to and enforced by the Court, that it is
unnecessary to cite authority for its support. The facts set
out in this record bring the case clearly within the opera-
tion of the principle, unless, as contended by the plaintiff,
there be some distinguishing feature to take it out of the
general rule. The land devised to the wife for life, remain-
der to her son, subject to the charge in favor of the daugh-
ters, was the property of the wife. This was well known to
the husband. The personal property bequeathed to her in
the will was the property of the husband. Upon the death
of the husband the wife well knew the status and value of
the property and the provisions of the will. She was *sui
juris*, and fully competent to elect by dissenting from the
will, if she so desired, thereby holding her land and taking
the personal property as her year's support by appropriate
proceedings for that purpose. She deliberately and by a
most solemn and unmistakable act chose to take and *hold
under the will*. The principle of law which fixed her status
in respect to the property is thus stated: "The doctrine of
election as applied to the law of wills simply means that he
who takes under a will must conform to *all* of its provis-
ions. He can not accept a benefit given by the testamen-
tary instrument and evade its burdens. He must either con-
form to the will or wholly reject and repudiate it. No per-
son is under any legal obligation to accept the bounty of the
testator; but if he accepts what the testator confers upon
him by his will, he must adhere to that will throughout all

its dispositions." Underhill on Wills, sec. 726. This Court
in *Weeks v. Weeks,* 77 N. C., 421, says: "It is a familiar
principle of equity that a devisee or legatee can not claim
both under a will and against it. If the will give his prop-
erty to another he may keep his property, but he can not at
the same time take anything given to him by the will; for
it was given to him upon the implied condition that he
would submit to the disposition of his property made by
the testator." But it is suggested that, as the personal prop-
erty given the wife was worth only $100 and the land $500,
she took no *benefit* under the will; that she was entitled to
have the personalty allotted to her as and for her year's sup-
port, and, therefore, received no more than by the law she
was entitled to have from her husband's estate. We at
first thought this fact relieved her of the duty to elect, but
upon a careful examination of the works on Equity Juris-
prudence, and many cases, we find no suggestion of any such
exception to the general rule. The value of the personalty
and her right to claim in some other way presented a strong
reason to her for exercising her right to dissent from the
will and thereby elect to take against it, but with a full
knowledge of the facts she elected to prove the will and take
out letters of administration, assuming thereby the duty of
executing its provisions. If she had been misled or acted
under misconception of the condition of the estate and her
rights, she might have had relief and been permitted to ex-
ercise her right of election to dissent from the will, but
there is no suggestion of that kind here. It has been held
in New York that when one elected to take a benefit under
the will, with burdens attached, he was bound although it
turned out that the burden was greater than the benefit.
*Brown v. Knapp,* 79 N. Y., 136. "One who accepts a de-
vise or bequest does so on condition of conforming to the
will. No one is allowed to disappoint a will under which

he takes a benefit, and everyone claiming under a will is
bound to give full effect to the legal disposition thereof, so
far as he can, and when one is thus put to his election under
a will it matters not that what he takes turns out to be
greater or less in value than that which he surrenders."
*Caulfield v. Sullivan,* 85 N. Y., 153. Certainly this must
be so where the person knows at the time she elects to take
under the will the value of the property. In *Syme v. Bad-
ger,* 92 N. C., 706, Judge Badger, for the purpose of pro-
viding for the payment of a debt due his wife, devised and
bequeathed to her real and personal property in payment
of the debt. He left other property and other creditors.
Mrs. Badger qualified as executrix and took possession of
the property. It turned out that the property given her
was of insufficient value to pay her debts. This Court held
that by proving the will and qualifying as executrix she
elected to take under the will, and was thereby precluded
from resorting to other assets of her testator to pay her
debts. *Smith, C. J.,* quoting with approval the language of
this Court in *Mendenhall v. Mendenhall,* 53 N. C., 287,
said: "The act of qualifying as executrix and undertaking
upon oath to carry into effect the provisions of the will is
irrevocable." The authorities are cited in the opinion in
that case. The principle has been approved by this Court
in *Allen v. Allen,* 121 N. C., 328; *Treadway v. Payne,* 127
N. C., 436. We can see no distinction between the qualifi-
cation of the wife as executrix and administratrix with the
will annexed. In either case the will is offered for probate,
and the party claims under it and assumes the duty of ex-
ecuting its provisions. It is *argued* that the election by
Mrs. Nobles cannot affect the rights of her creditors. That
to permit her thereby to divest herself of her lands would
be a fraud upon them. If the debts were in existence at
the time of the death of her husband we should concur with

the plaintiff in this view. The record does not disclose when the debts were contracted. For the purpose of disposing of this appeal we cannot assume that the outstanding debts were contracted during coverture. If they were so contracted they could not as simple contract debts or bonds be a charge upon her land. Of course, if the debts were chargeable upon her land she could not, by her election to take other property of less value under her husband's will, permit the land to pass to other parties discharged of such debts. This question may be inquired into upon another trial. Her heirs at law and her personal representative, except in so far as the rights of existing creditors may be affected, are bound by her election. "An election once made by a party bound to elect, and under no misapprehension as to his rights, and with knowledge of the value of the properties to be affected by such election, is irrevocable, and binds the party making it and all persons claiming under him and also all donees under the instrument whose rights are directly affected by the election." Eaton on Eq., 199; *Cory v. Cory,* 37 N. J. Eq., 198.

A careful examination of the record we think explains the conduct of the parties. The land belonged to Simon J. Nobles. He conveyed it to his son-in-law, who immediately conveyed to the wife. It was the purpose, by these conveyances, to put the title in the wife, doubtless to meet some undisclosed conditions or family arrangement. The husband thereupon makes his will, giving this land to the wife for life, remainder to the son, subject to a charge of about one-half its value in favor of his two daughters. The wife leaves a will in which she makes no mention of this land— the reasonable inference is that she understood and acquiesced in her husband's disposition of the property. The issue in regard to her ownership is found by consent in the affirmative. It was evidently the purpose of counsel to pre-

sent the contested question upon the third issue. His Honor instructed the jury to answer the issue "No." Strictly speaking, his Honor was correct. The right of the remainderman, S. J. Nobles, does not accrue by way of estoppel. A court of equity, would, if applied to at the death of the husband and the election of the wife to take under the will, have decreed a conveyance of the legal title in the land to the remainderman, subject to the life estate of the wife; or accomplished the same end by impressing a trust upon the legal title in accordance with the disposition made in the will. Mr. Eaton says: "If the donee elects to take under the will he must carry out all of its provisions, and transfer his own property disposed of thereunder to the person named as the recipient thereunder. Eaton's Eq., 66. The will of Simon J. Nobles did not transfer the legal title, hence it remained in the wife, burdened with the rights of the son and his sisters. We notice this phase of the record because of the apparent inconsistency in the verdict. The legal title to the land is in the heirs of Mrs. Nobles, but as she would have been precluded from asserting it against the devisee in the will, save for her life estate, so her executor may not sell the naked legal title as against the beneficial owner, the defendant, Simon J. Nobles. The cause must be remanded for a new trial in accordance with this opinion. It is so ordered.

New Trial.

WALKER, J., dissenting. The facts of this case are well stated in the opinion of the majority of the Court, as written by *Mr. Justice Connor,* and it is not necessary therefore to repeat them here. I do not differ with my brethren of the majority in their understanding of the facts, but their views and mine are not at all in accord as to the law applicable to those facts. They think, and have so decided, that a case

of election is presented, which deprives the widow of her land, while I do not—my opinion being that the law did not compel her to part with her valuable property in exchange for the paltry sum of one hundred dollars which was given her in the form of a legacy, but which really belonged to her at the time of the pretended gift. The doctrine of election came to us from the civil law and is equitable in its nature. It is based upon no principle, as I conceive, which in its application will work so great an injustice as to take that which in law belongs to a widow and give it to another upon an inadequate consideration, to say the least of it. "An election, in equity, is a choice which a party is compelled to make between the acceptance of a benefit under a written instrument and the retention of some property already his own, which is attempted to be disposed of in favor of a third party by virtue of the same paper. The doctrine rests upon the principle that a person claiming under any document shall not interfere by title paramount to prevent another part of the same document from having effect according to its construction; he cannot accept and reject the same writing." Bispham's Eq. (6 Ed.), p. 413, sec. 295. The doctrine, it is said, requires that there should be alternative benefits between which the donee is to make his choice once for all, and it has been settled by the more recent authorities that it is based upon the principle of compensation and not at all upon the idea of forfeiture, as was formerly but erroneously held, by not distinguishing between express and implied elections and cases in which the beneficiary elects to take under and those in which he elects to take against the will. The text writers and the courts are now practically agreed that the underlying principle of this equity is one of compensation to the disappointed donee instead of an entire forfeiture by the other donee who gets the benefit under the will. Fetter's Eq., pp. 51 and 54.

The latter must only make compensation out of his share under the will to the person who is disappointed by his election.   Indeed, Adams in his work on Equity (2 Am. Ed., by L. & C.), p. 237 (97), says: "The (testator's) intention is at once effected if compensation be the result, but will be manifestly defeated by forfeiture unless the Court can imply a gift to the disappointed donee, for which the testator has given no authority."   Eaton on Eq., 182; Snell's Eq., pp. 204, 205; 1 Pom. Eq. Jur., sec. 462; Bigelow on Estoppel (5 Ed.), pp. 674, 675; Bispham's Eq. (6 Ed.), secs. 296 and 395; Herman on Estoppel, sec. 1031.   The doctrine is not applicable if there is no fund from which compensation can be made.   This follows as a matter of course.   Snell's Eq. (1 Am. Ed.), 205, 206; Bigelow on Estoppel, p. 676; Fetter's Eq., p. 54.   But it is also necessary, in order to put any one to an election, that the testator should give by his will property actually and absolutely owned by himself to the person required to elect, or, as it is put, some free disposable property which can become compensation for what the donor seeks to take away.   Bigelow, 676; Fetter, 52 and 54; Eaton, 185.   This doctrine of equity has grown out of the fundamental maxim that he who seeks equity must do equity, and it does not arise when the conscience of the alleged refractory donee is not so affected as to require him to surrender something of his own for that which his donor has conferred upon him.   1. Pom. Eq. Jur., sec. 461; Snell, p. 202.   Applying the principle as thus understood to the facts of our case, let us see if there was any obligation imposed upon Mrs. Nobles to elect between inconsistent benefits, and whether by what she did her title to the land devised in the will has been lost or in the least impaired.   In the very beginning it must be conceded that such is not the case, as, in any event, she is required to give up only the pecuniary legacy of one hundred dollars for

the purpose of making compensation, and to that extent merely does she lose anything. The authorities are all at one in stating that she may keep that which is her own, provided she makes compensation to the losing donee, if the alternative gift to her is sufficient for that purpose, and if not sufficient then *pro tanto,* and if it is more than enough for the purpose she retains the surplus. This is the well-settled rule, as ·the above citations will substantiate, and it holds good in her favor until by some decree of the Court she has or, if she is dead, her heirs have, been compelled to convey to the other donee. The devisee, S. J. Nobles, could recover at the utmost only the sum of one hundred dollars and interest if the land is worth more than that sum.

It is not necessary though to rely upon the principle of compensation in order to defeat the claim of the defendant, S. J. Nobles. Every widow of an intestate, or of a testator from whose will she has dissented, is entitled, besides her distributive share in her deceased husband's personal estate, to an allowance for the support of herself and family for one year after his death, the value of that "year's allowance" being not less than $300. The Code, secs. 2116 and 2118. Where the value of any gift of personal property to her in her husband's will does not exceed the amount allowed her by law she need not dissent in order to claim her year's support, because it is presumed to be given by the testator as and for her allowance. *Flippen v. Flippen,* 117 N. C., 376. There could be no reason for requiring her to dissent if she will get no more by doing so, and in such a case she takes the amount given in the will as her year's allowance by virtue of the law and not of the will. She is considered as in the possession and enjoyment of it under her paramount title. Statutes, in all material respects like ours, have been thus construed in other States by courts whose decisions are entitled to the highest respect. *Baker v. Baker,*

57 Wis., 382; *Godman v. Converse,* 38 Neb., 657; *Moore v. Moore,* 48 Mich., 271; *Williams v. Williams,* 71 Mass., 24. Why should the widow be compelled to dissent in such a case as this one? Why be required to do so vain and unprofitable a thing? If she had formerly dissented she would have received no more than if she had taken what was given by the will, as the one hundred dollars was all of her husband's personal estate and therefore with or without a dissent she would get the same thing, and much less than the minimum sum to which she was entitled under the law. The benefit which she received, in order to bind her by an election to abide by the devise of her own property, must have been a substantial one, and surely must have been something of which her husband had the absolute right of disposal without any right of veto in her. This is not like the case of a distributee who can take nothing unless the ancestor dies intestate, but must be content, when there is a will, to take what is given by it, and who cannot repudiate it in order to take under the law, being dependent altogether on the bounty of the decedent. *Pearson, C. J.,* notes the distinction in *Harrington v. McLean,* 62 N. C., at p. 260, in citing and commenting on *Mendenhall v. Mendenhall,* 53 N. C., 287. I have been able to find but two cases in which the point presented in this case has been considered In *Stone v. Vandermark,* 146 Ill., 312, a widow had taken possession of certain land and personal property devised to her by her husband and it was contended that she thereby elected to take under the will, but the Court, finding that the personal property was less in value than she was entitled to receive under the statute as her year's allowance, and that the land was the homestead, to the possession of which, during her life, she was also entitled under the law, held that there had been no election. The case of *Compher v. Compher,* 25 Pa., 31, is much like ours in its facts. There

the husband bequeathed to his wife personal property to
the value of $300, being the amount of the year's support
allowed by the statute, as in this case.   She accepted the
provision made for her and the Court held that this did not
bind her to an election to take under the will, as she claimed
under the law, but the Court further said that if she had
claimed as distributee it would have been otherwise, making
the same distinction that was made by *Pearson, C. J.,* in
*Harrington v. McLean, supra.*   In *Smith v. Butler,* 85
Texas, at p. 130, the Court, in discussing this question,
said: "The wife would receive, if she took under the will,
something she would not otherwise be entitled to, so far as
the record shows, either by reason of her community right
or as the surviving head of the family; and by the will the
children of the testator would be deprived of some property
to which they would have been entitled but for the will.
The principle of election is that he who accepts a benefit
under a will must adopt the whole contents of the instru-
ment, so far as it concerns him, conforming to its provis-
ions and renouncing every right inconsistent with it.   Some
free disposable property must be given to the electing donee
which can become compensation for what the testator sought
to take away."

The rule requires, therefore, that there must be a benefit
which the party claimed to have elected would not have en-
joyed if the will had not been executed.   What did this
widow get under the will that she would not have received
under the law by dissenting (if a dissent was necessary) or
if her husband had died intestate?   The taking of her prop-
erty under such circumstances, when she gets nothing that
can justly be called compensation, would amount to con-
fiscation and would violate the cardinal principle of the doc-
trine of election.

The cases cited in the opinion do not sustain the conclu-

sion of the Court, because in all of them there was a substantial benefit received by the electing donee. There was something like compensation given for that which was taken and devised or bequeathed to another. In *Syme v. Badger,* the donee was given, not only a specific fund for the payment of the debt due her, but also a large pecuniary or "bond" legacy and also the residue of the testator's estate. Every one of those cases proceed upon the assumption that the donee who was held to have made an election had received something from the testator which would not have been his or hers but for the bounty thus conferred.

The idea that the mere qualification .of a person as executor or administrator with the will annexed estops him to claim against the instrument, that is to accept and reject it at the same time, was founded upon the ancient provision of the common law by which the personal representative, after paying debts and legacies, was entitled to the surplus of the estate, and also had the right of retainer against other creditors whose debts were of equal dignity and had other rights and privileges not necessary to be enumerated. All of these have been taken away and the rule founded upon this reason of the common law has ceased to exist. This is in accordance with the maxim of the law. "Reason is the soul of the law, and when the reason of any particular law ceases, so does the law itself." Broom's Legal Maxims (8 Ed.), p. 159. The proposition that an executor is thus estopped by his proving the will and qualifying under it is distinctly repudiated by this Court in *Allen v. Allen,* 121 N. C., 328, as the following language of the Court in the opinion of *Montgomery, J.,* will clearly show. Discussing the question as to whether proving the will and qualifying as executor estop or amount to an election, the Court says: "This is an important question and is raised in its naked simplicity for the first time in this State. Under the com-

mon law the answer to the question was ready enough, if not entirely satisfactory. By the act of qualification the executor became vested with the whole personal estate and after the payment of debts and legacies was entitled to the surplus, unless it appeared on the face of the will that the testator did not intend for the executor to have it. Therefore, and under that system, it is manifest that the act of qualifying as executor and taking the oath of office to execute the provisions of the will was irrevocable on his part, and the executor had to proceed to execute the will in all its parts and in its entirety. But the reason of the common law is of no force now, for executors, after the debts and legacies are paid, are trustees of the residuum for the next of kin." This repudiates the ancient doctrine. What is said by *Chief Justice Smith* in *Yorkley v. Stinson,* 97 N. C., at p. 240, in referring to *Mendenhall v. Mendenhall* and *Syme v. Badger,* must be taken and considered in connection with the peculiar facts of those cases in which it appeared that the donees received a clear benefit. The point we are discussing was not involved in *Yorkley v. Stinson,* but the language used in that case by the *Chief Justice,* at page 239, shows plainly that he thought it necessary some benefit should be received in order to put the donee to an election. The very essence of the doctrine is that there should be inconsistent benefits. This is implied by the word "election," and the party to chose may keep his own, which is given away by a will, unless an alternative benefit is presented, which one, if accepted by him, renders it inequitable and unconscionable that he should retain the other. As the doctrine is a creature of equity, it should not be allowed to work an injustice and should not be applied to any case upon purely technical principles, and where the person whom it is proposed to bind by the election has received no real or substantial advantage by gift which would affect his con-

136——8

science and preclude his right to disappoint the will of the donor. That is the case to be found in this record.

It all comes to this: That the widow did not forfeit her land so as to divest her title and take away the right of her executor to sell it, but if she was put to an election at all, which I think has been shown not to be the case, she can, still claim her own (and her executor succeeds to her right) by making compensation to the extent of the legacy received by her. The subject, in this aspect of it, is so exhaustively discussed and the principle for which I contend is so conclusively vindicated in 2 Underhill on Wills, sec. 729, as the only true and equitable one, and the one too which has been generally if not universally accepted, that I must add what is said by that text writer to the other authorities cited. If it is suggested that this view of the case was not presented in the Court below, nor in this Court, I can only answer that the lower Court held the plaintiff was not estopped, and, as the charge to the jury to that effect was correct, it can make no difference what reason for the ruling was in the mind of counsel or the Court. We must presume, in the absence of a reason being assigned, that the decision was based upon the right one.

I conclude that neither the widow nor her executor was estopped to deny the title, nor was she put to an election, and, if she was, the case should have been decided upon the principle of compensation and not upon that of forfeiture or estoppel. In no view of the case can the Court, upon the ground of estoppel or election, deprive the widow or her executor who represents her of that which was rightfully hers and give it to another, who will lose nothing to which he is justly entitled if the money and the land are both adjudged to have been hers at her death. In my judgment, it would be not only against sound law so to do, but against established principles of equity. The defendant would be

merely receiving something for nothing.   Believing as I
do, and for the reasons stated, that the Court committed no
error in the trial of the case, and that it should be so de-
clared, I must dissent from the opinion of the Court.

DOUGLAS, J.   I concur in the dissenting opinion.