## HOGGARD v. JORDAN.

(Filed March 27, 1906).

*Election—Wills—Executors and Administrators—Estoppel.*

Where a husband and wife owned a tract of land by entireties, and
the husband died, leaving a will giving his wife a life estate in
said tract and also in two stores and lot, and his entire personal
estate valued at $200, and after her death the same property was
given to their children, and the wife proved the will and qualified
as executrix and took into her possession the personal estate and
occupied the land for nine years until her death, such conduct was
an election to claim under the will and her administrator, eight
years after her death and against the consent of her real represen-
tatives, will not be permitted to make an election for her to claim
against the will by simply filing a petition for the sale of said
tract of land to make assets to pay her debts.

ACTION by John W. Hoggard, Administrator of Mary C.
Jordan, against C. E. Jordan and others, heard by *Judge
R. B. Peebles* and a jury, at the September Term, 1905, of
the Superior Court of BERTIE.

This was a petition by the administrator of Mary C. Jor-
dan, deceased, to sell land for the purpose of making assets
with which to pay debts. The defendants are the devisees of
Jesse N. Jordan, and heirs at law of his widow, Mary C.
The petitioner alleged that his intestate, Mary C., died seized
of the lands described in the petition. This was denied by
defendants. The cause was, upon issue thus joined, trans-
ferred to the civil issue docket for trial. By consent, His
Honor found the facts. On the 18th day of May, 1877, Mary
C. Jordan, being the owner of a share of a tract of land,
descended from her father, joined with her husband, Jesse N.
Jordan, in a conveyance of said share to her sister, Florence
Hancock, and her husband, R. E. Hancock. On the same day
the said Florence and her husband joined in a conveyance of
her interest in said land to the said Mary C., and her husband,

Jesse N. Jordan, who died during the month of October, 1887, leaving a last will and testament, nominating the said Mary C. executrix thereto. Item 1 of his will is in the following words: "I leave to my beloved wife, Mary Catherine, during her natural life, my entire personal property of every kind and description, to use as she may think best, together with all of my real estate, consisting of the Hancock tract of land, and the two stores and lots situated in Lewiston, to lease or rent, as she may think best for the interest of herself and younger children." He gave the same property upon the death of his wife to his children, who were also the children of his wife, Mary C. The value of the personal estate of said Jesse N. was, at the time of his death, two hundred dollars. The said Mary C. proved the will and qualified as executrix thereto, taking into her possession the personal estate and occupying the land until her death, during the month of March, 1896. She left no will. Petitioner qualified as her administrator, January 4, 1904. She was indebted in the sum of $75. His Honor, upon the foregoing facts, being of the opinion that the said Mary C. took under the will but a life estate in the lands, rendered judgment for defendants, to which plaintiff excepted and appealed.

*Winston & Matthews* for the plaintiff.
*Day, Bell & Dunn* and *J. B. Martin* for the defendants.

CONNOR, J., after stating the case: We had occasion to consider the general principle involved in this record in the case of *Tripp v. Nobles,* 136 N. C., 99, and upon a rehearing in 138 N. C., 747. The plaintiff insists that a distinction may be drawn between that case and the facts presented in this appeal; he also suggests that the very able dissenting opinion "is more in harmony with decisions and justice." It must be conceded that in some cases, there is an apparent hardship in the application of the well-settled doctrine of

election, but a careful examination of the numerous cases to be found in our own and the English courts show a solicitude on the part of the judges to so administer the doctrine that the rights of all persons interested shall be protected; decrees are so moulded, that, when possible, compensation is directed to be made and forfeitures of estates prevented. The doctrine of election between inconsistent dispositions of property in wills and other instruments is peculiarly of equitable origin, and its administration in the jurisdiction of courts of equity "by reason of the inflexible, inelastic and cramped procedure of the common law courts." An examination of the will of Jesse N. Jordan, made but a few months prior to his death, discloses a wise plan for the disposition of his estate, by which his widow is enabled to use both her own and his property "for the best interest of herself and younger children." To this end, he gives her a life estate in the Hancock land, to which it is not improbable he thought he was entitled to one-half, "two stores and lot in Lewiston, N. C.," and his entire personal estate. It will be noted that, at the time of his death, four of his children were under fourteen years of age, and all were minors. At her death he gives to each child a share in the property. It was stated on the argument that, she, for some reason, did not get the stores. We are concluded in this respect by the record—the petition states that she died seized of the Hancock land and "two stores and lot situate in Lewiston, N. C." His personal estate was worth but two hundred dollars, to all of which she would have been entitled as her year's support. There is nothing in the record to show the value of the land or the stores, nor that the latter did not belong to the testator. We are of the opinion that upon the facts found, Mrs. Jordan was put to her election, either to claim under the will as a whole, or to claim against it, surrendering any other than her dower right in the stores, and her year's support in the personalty. She knew the contents of the will—proved it and qualified as

executrix, remained in possession of the property, until her death in 1896, and her children went into possession under the will. Thus for nine years she, by her conduct in proving the will and qualifying and by using the property, acquiesced in the disposition made by her husband. For eight years since her death, the only persons who could have been benefited by electing to take as her heirs, and against the will, have likewise acquiesced in it. Certainly, after so long acquiescence in the provisions of the will, her administrator, against the consent of her real representatives, will not be permitted to make an election for her by simply filing a petition for the sale of the land. Her conduct brings the case clearly within the observation of *Lord Hardwicke,* in *Tomkins v. Ladbroke,* 2 Vesey, Chan., 593, that the courts will not "disturb things long acquiesced in by families upon the foot of rights, which those in whose place they stand, never called in question." The *Vice Chancellor,* in *Dewar v. Maitland,* L. R. E., 2 Eq., 834, said: "Although the court compels persons to elect, yet election itself is a voluntary act. The doctrine has been established for the peace of families and of the public, that if property has been long enjoyed according to a certain mode and rights, this court will be very slow to disturb such enjoyment. The heir in this case chose to enjoy the property devised by his father—whether properly devised or not—upon the footing of his will." In *Worthington v. Wigginton,* 20 Blav., 67, the question was discussed by *Sir John Romilly,* M. R., saying: "Two things are essential to constitute a settled and concluded election by any person who takes an interest under a will, which disposes of property under that will. There must be, in the first place, clear proof that the person put to his election was aware of the nature and extent of his rights; and in the second place, it must be shown that, having that knowledge, he intended to elect. In this case, I think that the widow was aware of what her rights were; she was fully aware of the contents of her husband's

will, she was the sole executrix named in it and had proved it; and she had made use of her character of executrix to enforce payment of money due to her late husband and to arrange with the landlord for the surrender of the five leaseholds. She must, therefore, on the one hand, have known that her husband had, by his will, specifically bequeathed the stock standing in their joint names, and that by it he gave her only a life interest in that stock. * * * She knew that the will disposed of her property, she knew that she could withdraw it from the operation of the will."

The discussion and review of the authorities are full and exhaustive. In *Adset v. Adset,* 2 John, Ch. 448, *Chancellor Kent* said: "Taking possession of property under a will or other instrument and exercising unequivocal acts of ownership over it for a long time, will amount to a binding election." *Penn v. Gugginheimer,* 76 Va., 839; Pom. Eq., 513; Fetter Eq. 56. We have discussed the question upon the theory that the widow in her life time, or her heirs at law at her death, were seeking to claim her land devised by Jesse N. Jordan. It would seem that, if such were the case, they would, under the circumstances, be held to have elected to claim under the will after the unequivocal acts of ownership and long acquiescence in the disposition made by her husband. However this might be, we are unable to perceive how, in the light of the facts appearing in the record, where all of the parties interested, or who, if no disposition had been made of the land by the husband, would have been interested, are still acquiescing in and claiming under the will, the administrator of Mrs. Jordan can treat the election to claim against the will, as having been made, and subject the land to sale. It is conceded that the only purpose in seeking to sell the land is to pay a debt contracted by Mrs. Jordan after the death of her husband. She was certainly under no legal or moral obligation to the creditor to dissent from her husband's will or elect to take against it. The status of her property was

a matter of record when the debt was contracted, and no question raised until eight years after her death. The children, it is to be presumed, upon the death of Mrs. Jordan, took possession of the land under their father's will. It is difficult to see how, against their consent, a court, in a statutory proceeding, having no equitable element in it, can proceed to sell the land. If sold for a price in excess of the debt, to whom and in what right would the excess be paid? Certainly if the land is sold, as her property, the excess, after paying the debt, should be paid to her heirs and not the devisees of her husband. There can be no partial election to claim against the will. It is well settled that the election, when made, must be complete and final. Rights of property and family settlements made with the consent of husband and wife, or, at least, acquiesced in by the survivor, would be insecure, if, after so many years, they could be disturbed in this summary method. To the suggestion that Mrs. Jordan made no will, it would seem an answer that she acquiesced in the disposition of her land made by her husband. As we have said in *Tripp v. Nobles, supra,* the creditor cannot reasonably complain; he extended credit with the condition of the title disclosed on the records. Whether Mrs. Jordan preferred to abide by the will of her husband and take the two hundred dollars in personalty under the will by reason of an arrangement made between them, or out of respect to his wishes, or for any other reason, is not material. She, by her conduct, showed that she was content with the disposition of her property; and his will, approved by her, should not now be disturbed. To do so would not "be in harmony with decisions and justice."

We have given the case a careful consideration and re-examined the authorities and find no reason for disturbing the decisions heretofore made by us. It may be proper to say that all of the authorities disclose a purpose to give to the widow, claiming dower in land devised to her, the largest possible latitude, both in regard to the construction of the will and the

time within which she is required to elect.   As said by
*Romilly, V. C.,* in *Worthington v. Wigginton, supra,* "the
cases relative to dower have no application to the present."
The judgment of the court below must be

Affirmed.

WALKER, J., concurring in result: This case is not like
*Tripp v. Nobles,* 136 N. C., 99.   Here there was a substan-
tial benefit conferred by the will, which forced the plaintiff's
intestate to choose between the acceptance of that benefit and
the retention of the property, already her own, which is
attempted to be disposed of by the same instrument.   There
was no such benefit received under the will construed in *Tripp
v. Nobles.*   It would seem but just to require that the benefit
bestowed should be a substantial one, in order to put the donee
to an election, and that it should not consist merely of prop-
erty which he would have received under the law, if the will
had not been made.   Further investigation confirms me in the
view entertained and stated in my dissenting opinion in that
case.   The principle was adopted and applied in *Tyler v.
Wheeler,* 160 Mass., 206, where it was held that an executor
is not estopped by qualifying under the will of his wife to
claim his legal interest in her estate, and in *Register v. Hens-
ley,* 70 Mo., 189, the court decided that a widow's renuncia-
tion of the provisions of her husband's will, made in lieu of
dower, was not invalidated by her not surrendering personal
property, which she had previously received under the will,
where the amount was the same as that which she would re-
ceive under the administration law.   The case of *Loving v.
Craft,* 16 Ind., 110, also sustains the same view, as the court
held that a surviving wife is entitled to the statutory pro-
vision of $300 "notwithstanding she may have accepted the
provisions made for her by the will of her husband."   *Correll
v. Ham,* 2 Iowa, 552; *Wilbur v. Wilbur,* 52 Wis., 298.   The
language used in *Fitts v. Cook,* 59 Mass. (5 Cush.), 601,

seems to fit the case: "In looking at the provisions of this will," the court said, "it will be seen that they are so little a departure from what would have been the legal rights of Joanna Cook without the will, that little can be inferred from the subsequent use of the property in the manner set forth in the agreed statement." The court then held that there was no binding election or estoppel. The law is thus stated in Bigelow on Estoppel, 676: "This doctrine of election is never applied in the law of wills when, if an election is made contrary to the will, the interest which would pass from the testator by the will cannot be laid hold of in equity to compensate the disappointed donee. Some free disposable property must be given to the electing donee which can become compensation for what the testator sought to take away."

It was held in *In re Gwyn,* 77 Cal., 313, that "a widow is not estopped to make an election to take under the law by causing the will of her husband to be probated and by becoming executrix thereof." To the same effect is *Estate of Frey,* 52 Cal., 658. The court decided in *Collier v. Collier,* 3 Ohio St., 369, that "a widow electing to take under a will, containing provisions for her, expressed to be in lieu of dower and all other claims on the estate of the testator, is not barred of her right to the year's support, provided by law, from the estate of the debtor." So it was held in *Taylor v. Browne,* 2 Leigh (Va.), 454, that by taking administration with the will annexed, the widow will not be held to have elected to claim under the will instead of under a deed of settlement, formerly made by her husband for her use and benefit and which contained a disposition of the property different from, and more beneficial to her than the provisions of the will. Taking under the will, says the court in *Hubbard v. Russell,* 73 Ala., 578, will not deprive the widow of her exemption of one thousand dollars allowed her by the law, for she substantially and practically takes what already belongs to her.

Election being a matter of equitable cognizance, the ordi-

nary principles of equity must apply, one of which is that the court will never decree anything to be done which is plainly unfair, oppressive or unconscientious, especially when the rights of others will not be materially affected by a refusal to do so. It also regards more the substance than the mere form of things. The authorities, it seems to me, clearly establish that the widow's year's provision, or any other interest created by the law and independent of the disposition of the husband, cannot be considered as a bounty conferred, and therefore no election can arise in such a case. It would appear to be against equity so to hold. The proving of her husband's will by her as executrix, under such circumstances, should not therefore put her to an election. There is not in such a case a single equitable element to support an estoppel, and it is so held in the other States, and I think in decisions of this court, as I have shown in my former opinion. The cases in our reports, which are relied on in *Tripp v. Nobles,* to show the contrary, are clearly distinguishable from that case. In *Tripp v. Nobles* it appeared that the intestate could take nothing under the will which was not already hers by force of the law. The testator therefore had no free, disposable property to give her, and whether he has or not is the test by which to determine whether a case of election is presented.

Upon the doctrine of compensation, I will add to the authorities cited in my dissenting opinion in *Tripp v. Nobles,* the following: In *Bell v. Culpepper,* 19 N. C., 20, this court, by *Gaston, J.,* said: "The rule of election, in the sense in which it is insisted on by the defendant, is confined exclusively to courts exercising equitable jurisdiction, which have it in their power to restrain men from the unconscientious assertion of acknowledged legal rights. They hold that it is against conscience for a man to take a benefit under a will or other instrument, and at the same time disappoint other plain provisions of that will, made in favor of third persons. Of course he may keep, if he pleases, what was before his own;

for the mistake of the donor cannot take away his property; but if he will insist on enjoying the interest given him by the instrument, they will by proper decree provide that so enjoying it he shall give effect as far as he can to the other provisions of the instrument." And in *Alston v. Hamlin,* 19 N. C., 124, this court, by the same judge, said: "If the defendant can avail himself of the implied election which was insisted on at the trial, it must be before a tribunal competent to decide upon the equity of such election. The principle of election, as here asserted, is a principle of equity, proceeding on the doctrine of an implied condition, of which a court of equity in a proper case will enforce the performance by compelling the legatee, if he elects to take the bequest, to make compensation out of his own property to the disappointed legatees."

It does not appear in the case at bar what is the value of the land, nor what is the value of the "Lewiston lots," so that the principle of compensation could not be applied, even if there had not been a binding election to take under the will but an election had been so made as to call for the application of that principle, and even if equitable relief can be administered in this statutory proceeding and by the court where it originated. *Vance v. Vance,* 118 N. C., 864.

While I differed from the majority of the court in the case of *Tripp v. Nobles,* as to the questions of estoppel and election involved, yet having fully stated what, in my opinion, is the correct principle of law, as it should have been declared and applied to the facts, henceforth that decision shall be the law with me, for it may be right, though the conclusion reached by the court, I must think, and this is said with the utmost deference, is not supported by the best precedents or by the weight of authority.